### Glenda M. LAUGHINGHOUSE, Plaintiff,

v.

### Jerry RISSER, et al., Defendants.

### No. 87-4257-R.

United States District Court, D. Kansas.

Dec. 18, 1990.

Brian S. Frost, Topeka, Kan., for plaintiff.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination action. Plaintiff brings claims of sexual discrimination and sexual harassment under Title VII and the Kansas Act Against Dis-

crimination (KAAD) and additional pendent state claims of outrage, battery and negligence. The named defendants are Credithrift Financial Management Corporation, plaintiff's former employer; Jerry Risser, plaintiff's former supervisor; and George Lindstrom, Risser's supervisor during plaintiff's tenure. This matter is presently before the court upon defendants' motion for summary judgment.

Under Fed.R.Civ.P. 56, summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Id.* at 323, 106 S.Ct. at 2552. However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.*

A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249, 106 S.Ct. at 2510. A mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact and to avoid summary judgment. *Id.* at 252, 106 S.Ct. at 2512. "In essence ... the inquiry ... is ... whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided [or so lacking] that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512; see also, *Celotex Corp. v. Catrett, supra,* 477 U.S. at 325, 106 S.Ct. at 2553.

Many of the pertinent facts in this case are in dispute. For an understanding of the arguments contained in the briefs relating to the instant motion, the court shall provide a summarized version of the facts and allegations.

Plaintiff began working for Credithrift in March 1983 in Salina, Kansas. She was subsequently transferred to Credithrift's Topeka office as its branch manager in May 1985. Plaintiff's immediate supervisor was defendant Risser, a district manager for Credithrift. On September 15, 1985, plaintiff and defendant Risser had dinner together at a Topeka restaurant after working late at the office. Plaintiff contends that following dinner Risser asked her to come to his motel room and "stay all night." Plaintiff declined Risser's invitation. Plaintiff asserts that Risser's demeanor at the office changed after the September 15 incident. Plaintiff alleges that Risser's already harsh management style became much worse. Plaintiff suggests that, while Risser was abrasive to all employees, he was more abusive towards her. Plaintiff alleges that she began to suffer physical problems in November or December of 1986 due to Risser's conduct. On March 6, 1987, plaintiff requested a leave of absence based on her doctor's ad-

vice. This request was subsequently granted on April 14, 1987. In July or August 1987, plaintiff first realized she might be suffering from emotional problems. On August 17, 1987, plaintiff filed an application for long-term disability benefits with Credithrift. Plaintiff filed a complaint of discrimination with the Equal Employment Opportunity Commission (EEOC) on approximately August 26, 1987. This lawsuit was filed on September 18, 1987. Pursuant to plaintiff's application for long-term disability benefits and at the request of Credithrift, plaintiff was examined by Dr. Herbert C. Modlin, a psychiatrist with the Menninger Foundation in Topeka, on February 23 and 26, 1988. Dr. Modlin concluded that plaintiff was disabled from any work for which she was qualified during the period from March 1, 1987 to February 1, 1988. He noted that plaintiff was employable in the same or similar work after February 1, 1988, except that she could not be near Risser or anyone like him. Credithrift approved long-term disability benefits for the period from September 7, 1987 through March 6, 1988. Plaintiff notes that her treating physicians and treating therapist indicated that she was not employable on February 1, 1988, and they would not release her to return to work. Plaintiff appealed Credithrift's decision, but her appeal was denied. Plaintiff has not returned to work for Credithrift.

Defendants seek summary judgment on all of plaintiff's claims. The court shall examine each claim and the arguments concerning it individually.

*Title VII*

Defendants begin by arguing that all incidents occurring in the fall of 1985 are time-barred pursuant to the applicable time limitations set forth in Title VII. In particular, defendants contend that the incident of September 15, 1985 at the Topeka motel is time-barred. Plaintiff asserts that any incidents occurring in the fall of 1985, and specifically the motel incident, are not time-barred due to the application of the doctrine of continuing discrimination.

■ As a general rule, a charge of discrimination must be filed with the EEOC no later than 300 days following the discriminatory act. 42 U.S.C. § 2000e–5(e). However, the continuing violation theory provides an exception to this general rule. Under the continuing violation theory, a plaintiff who shows a continuing policy and practice that operated within the statutory period has satisfied the filing requirement. *Bruno v. Western Electric Co.*, 829 F.2d 957, 960 (10th Cir.1987). A continuing violation occurs when there is a company-wide policy of discrimination or a series of related acts taken against a single individual. *Id.* at 961. There must be one instance of the discriminatory practice within the filing period for the continuing violation theory to apply. *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1543 (10th Cir.1987).

Plaintiff has sufficiently demonstrated that the continuing violation theory should be applied here. Defendants have not offered any argument to the contrary. Accordingly, the defendants are not entitled to summary judgment on plaintiff's Title VII claims based on incidents in the fall of 1985.

Defendants next argue that plaintiff has not established a *prima facie* case of sexual harassment. Defendants contend that Risser's alleged harassment of plaintiff was (1) not based on plaintiff's sex; and (2) not sufficiently pervasive and severe to constitute sexual harassment. Plaintiff counters that the record adequately supports her claim of sexual harassment.

■ Though manifested in a variety of forms, sexual harassment as an action under Title VII has been grouped by the courts into two categories: hostile work environment sexual harassment and *quid pro quo* sexual harassment. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987). Plaintiff claims that she was the victim of both types of sexual harassment in this case.

A hostile work environment exists when sexual conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Meritor Savings Bank, FSB*

*v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986). To be actionable under Title VII, sexual harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. at 2405 (quoting *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972) and *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982)). *Quid pro quo* sexual harassment is actionable "when submission to sexual conduct is made a condition of concrete employment benefits." *Hicks,* 833 F.2d at 1413. As contrasted with a hostile environment claim, a single incident of sexual harassment may sustain an action under the *quid pro quo* theory. *Keppler v. Hinsdale Township High School Dist. 86,* 715 F.Supp. 862, 867 (N.D.Ill. 1989).

Defendants point to the following facts in support of their argument that the record fails to show that plaintiff was harassed because of her sex: (1) plaintiff has admitted that the September 15 motel incident is the only incident where defendant Risser's comments could be construed as suggesting a sexual relationship; (2) defendant Risser continually stressed the need for improvement in business with plaintiff and the other office staff; (3) plaintiff has admitted that defendant Risser was abrasive to both male and female employees; (4) defendant Risser had reasons to be irritable during the period of plaintiff's employment; (5) the objective evidence indicates that defendant Risser's conduct after September 15 was not related to the motel incident; and (6) plaintiff failed to complain of sexual harassment to management employees of Credithrift, although she had several opportunities to do so. Defendants further argue that the sexual harassment of which plaintiff complains was not sufficiently severe or pervasive. In support of this argument, defendants point out that plaintiff relies solely upon the following: (1) the September 15 motel incident; (2) a few occasions where defendant Risser lightly touched plaintiff on her back and then, in mock horror exclaimed, "I'm not supposed to touch you, and I, that's sexual harassment."; and (3) defendant Risser's abrasive management style.

Plaintiff has countered that both of these arguments present questions of fact and should not be decided on summary judgment. Plaintiff also points out that the defendants have overlooked some of the evidence in the record.

■ We must agree with the plaintiff. The court has carefully examined the entire record and, viewing this evidence in the light most favorable to the plaintiff, we do not find that the defendants are entitled to summary judgment on plaintiff's Title VII claim of sexual harassment. The record sufficiently demonstrates that defendant Risser, although abrasive to everyone, was more abusive to females. The predicate acts underlying a sexual harassment claim need not be clearly sexual in nature, where acts would not have occurred but for the fact that plaintiff was a woman. *Hall v. Gus Construction Co., Inc.,* 842 F.2d 1010, 1014 (8th Cir.1988). Moreover, the record shows more than isolated incidents of abusive conduct. Accordingly, defendants' motion for summary judgment on this claim shall be denied.

Defendants Credithrift and Lindstrom have also advanced some arguments concerning plaintiff's claims against them. Both argue that they are not liable for defendant Risser's conduct because they were unaware of his actions. Credithrift further asserts that it is entitled to summary judgment on plaintiff's claim for discriminatory denial of long-term disability benefits because it acted without regard to the plaintiff's sex. Plaintiff again contends that the facts concerning these arguments are in dispute and do not permit the grant of summary judgment.

We shall first discuss the issue of employer and supervisory liability. In *Meritor Savings,* the Supreme Court declined to announce a definitive rule on employer liability under Title VII. The Supreme Court provided this vague guidance:

[W]e do agree with the EEOC that Congress wanted courts to look to agency

principles for guidance in this area. While such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define "employer" to include any "agent" of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible. For this reason, we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. See generally Restatement (Second) of Agency §§ 219–237 (1958). For the same reason, absence of notice to an employer does not necessarily insulate that employer from liability. *Ibid.*

477 U.S. at 72, 106 S.Ct. at 2408.

In *Hicks*, the Tenth Circuit provided some additional guidance based on the Supreme Court's comments in *Meritor Savings:*

> We find guidance in the Restatement (Second) of Agency § 219 (1958). Under § 219(1), an employer is liable for any tort committed by an employee "while acting in the scope of ... employment." *Id.* However, as one commentator noted, "[s]exual harassment simply is not within the job description of any supervisor or any other worker in any reputable business." Holtzman & Trelz, *Recent Development in the Law of Sexual Harassment: Abusive Environment Claims after Meritor Savings Bank v. Vinson,* 31 St. Louis U.L.J. 239, 276 (1987). Thus, "[c]onfining liability ... to situations in which a supervisor acted within the scope of his authority conceivably could lead to the ludicrous result that employers would become accountable only if they explicitly require or consciously allow their supervisors to molest women employees." *Vinson v. Taylor,* 753 F.2d 141, 151 (D.C.Cir.1985), *aff'd in part and rev'd in part,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).
>
> Although § 219(1) of the Restatement of Agency provides scant assistance in assessing employer liability under Title VII, § 219(2) is more helpful. In particu-

lar, § 219(2) creates employer liability when (1) the master was negligent or reckless, Restatement (Second) of Agency § 219(2)(b) (1958), and (2) where the servant purported to act or to speak on behalf of the principal and there was reliance on apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." Restatement (Second) of Agency § 219(2)(d) (1958).

833 F.2d at 1417–18.

The court's review of the record reveals once again that summary judgment cannot be awarded to defendants Credithrift and Lindstrom on the issue of employer and supervisory liability. The knowledge of defendants Credithrift and Lindstrom concerning the harassment of the plaintiff remains in dispute. Accordingly, summary judgment on this issue must also be denied.

██ The court shall next turn to defendant Credithrift's argument on plaintiff's claim of discriminatory denial of her long-term disability benefits. Credithrift argues that the evidence shows that it relied upon the medical report of Dr. Modlin in denying plaintiff long-term benefits. Credithrift contends that there is absolutely no evidence of discriminatory intent with respect to this decision.

The argument and evidence presented by Credithrift on this particular aspect of plaintiff's sex discrimination claims is persuasive. Nevertheless, we do not believe that summary judgment should be granted. The court finds sufficient evidence of sexual discrimination by Credithrift against plaintiff to preclude the grant of summary judgment on this particular claim. The court does not believe under the circumstances of this case that this claim can be considered in complete isolation. Accordingly, summary judgment will also be denied on this claim.

KAAD

Defendants contend that they are entitled to summary judgment on plaintiff's claims based on the KAAD because plaintiff failed to exhaust her administrative remedies as required by Kansas law. De-

fendants point out that plaintiff did not file a complaint of discrimination with the Kansas Commission on Civil Rights prior to instituting this action.

The facts concerning this argument are not in dispute. On August 25, 1987, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and mailed a copy of the charge to the KCCR. On September 14, 1988, plaintiff filed an original complaint with the KCCR. Plaintiff suggests that the original complaint was filed after her counsel was notified that the previously filed "copy" did not constitute a proper filing with the KCCR. Plaintiff filed this action on September 18, 1988. On September 19, 1988, the KCCR notified plaintiff that her complaint of September 14, 1988 was untimely and could not be processed.

The defendants are correct that the Kansas Supreme Court has made clear that an individual must exhaust administrative remedies before filing an action under the KAAD in court. *Van Scoyk v. St. Mary's Assumption Parochial School*, 224 Kan. 304, 580 P.2d 1315 (1978); *Stephens v. Unified School Dist. 500*, 218 Kan. 220, 546 P.2d 197 (1975). "According to the exhaustion doctrine, no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Mattox v. Department of Transportation*, 12 Kan.App.2d 403, 747 P.2d 174, 175 (1987).

■ Plaintiff argues in response that the rationale of *Oscar Mayer v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) and *EEOC v. Commercial Office Products, Inc.*, 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) should control this issue. The court finds that plaintiff's reference to these cases is misplaced. In *Oscar Mayer*, the Supreme Court held that a complainant's failure to file an administrative claim within a state limitations period did not automatically render a federal claim under the Age Discrimination in Employment Act of 1967 untimely. 441 U.S. at 761–64, 99 S.Ct. at 2074–76. In *Commercial Office Products*, the Supreme Court held a complainant who files an ad-

ministrative charge that is untimely under state law can still benefit from the 300–day federal filing period set forth in Title VII. 486 U.S. at 124, 108 S.Ct. at 1670. Neither the holding nor the language in these cases supports the plaintiff's arguments. Title VII and the ADEA, like the KAAD, require the filing of a timely charge prior to the initiation of a lawsuit. 42 U.S.C. § 2000e–5(e); 29 U.S.C. § 626(d). However, the timely filing of an administrative charge is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). This court assumes that the Kansas courts would reach a similar conclusion concerning the KAAD. *See Birdwhistle v. Kansas Power and Light Co.*, 723 F.Supp. 570, 575 (D.Kan.1989) (summary judgment granted to defendant on plaintiff's KAAD claim where administrative charge not filed within six months of alleged discriminatory act).

■ Plaintiff has made no argument that she filed a timely complaint with the KCCR. In addition, she had made no argument of waiver, estoppel or equitable tolling. As a result, plaintiff has failed to exhaust her administrative remedies. Accordingly, the court finds that summary judgment must be granted to the defendants on plaintiff's KAAD claim because plaintiff did not file a timely charge with the KCCR as required by K.S.A. 44–1005(i).

*Outrage*

The defendants contend that the facts in the record fail to support a claim of outrage. Defendants argue that plaintiff has failed to demonstrate that the defendants' conduct was truly outrageous. Plaintiff responds that the defendants have taken an exceedingly narrow look at the evidence contained in the record. Plaintiff suggests that when all of the evidence is considered, including an affidavit prepared by Dr. Modlin, she has submitted ample evidence of outrageous conduct by the defendants. The defendants object to consideration by

the court of Dr. Modlin's affidavit for a number of reasons.

Four elements must be demonstrated to establish a claim of outrage: (1) the conduct of the defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe. *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175, 1179 (1981). It is for the court to determine if two threshold requirements have been met before an outrage claim may be allowed to proceed. The court must be convinced (1) that reasonable fact finders might differ as to whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) that the emotional distress suffered by the plaintiff is of such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Id.*, 637 P.2d at 1180.

The Kansas courts have been reluctant to extend the outrage cause of action to discrimination claims, including claims of sexual harassment, arising in the employment setting. *See, e.g., Freeman v. Kansas State Network, Inc.*, 719 F.Supp. 995 (D.Kan.1989); *EEOC v. General Motors, Inc.*, 713 F.Supp. 1394 (D.Kan.1989); *Haehn v. City of Hoisington*, 702 F.Supp. 1526 (D.Kan.1988); *Polson · v. Davis*, 635 F.Supp. 1130, 1150–51 (D.Kan.1986); *Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260, 1262 (D.Kan.1984); *Elliott v. Employers Reinsurance Corp.*, 534 F.Supp. 690, 691 (D.Kan.1982). Only in *Gomez v. Hug*, 7 Kan.App.2d 603, 645 P.2d 916 (1982), where the employee was subjected to vulgar, racist invective and threats of violence by the defendant over a span of several days was such a claim allowed.

Before we address the defendants' argument, we want to consider the issue of Dr. Modlin's affidavit. Defendants suggest that plaintiff's "11th hour submission . . . of the affidavit of Dr. Modlin" is im-proper and it should not be considered by the court. Defendants have objected to the affidavit because it (1) is based in part on hearsay; (2) fails to establish that the diagnosis of Dr. Modlin is based upon reliable medical practice; and (3) contains a legal conclusion. The court finds it unnecessary to consider the defendants' argument. The material contained in Dr. Modlin's affidavit is irrelevant for an examination of the first prong of the outrage theory. Dr. Modlin's testimony does have relevance to the second prong of the theory, but defendants have not contested this aspect of the plaintiff's outrage claim in the instant motion for summary judgment. Accordingly, the court finds it unnecessary to consider Dr. Modlin's affidavit and unnecessary to rule upon the arguments made by the defendants in objection to the affidavit.

In support of her outrage claim, plaintiff points to evidence that she was continually harassed and abused by defendant Risser over a two-year period in part due to her failure to agree to spend the night in a motel room with him and in part due to his prejudice against females. The harassment and abuse took the form of (1) screaming and cursing; (2) unwanted touchings and sexual comments; (3) fits of rage which included throwing things and tearing up files; (4) threats of loss of employment; and (5) inhibition of job performance through several tactics. One former employee characterized defendant Risser's conduct towards plaintiff as "a concerted effort to terrorize her and to intentionally break her spirit." Another former employee said that defendant Risser was "totally out of control" in his treatment of plaintiff. She further stated that Risser treated plaintiff "like an animal." She also noted that Risser was abusive to many people but that his treatment of plaintiff was "unique in its constancy and severity." Another employee said simply: "I don't know how she took [the abuse] for so long."

As noted previously, this court has always been reluctant to extend the tort of outrage into the employment setting. Nevertheless, the facts as alleged by the plaintiff in this case suggest that summary

844

judgment should not be granted. Plaintiff has alleged facts that, if proven, would support an outrage claim. The alleged facts in this case go far beyond those alleged in *Gomez*. Here, the nature of the abuse coupled with its constancy indicate that plaintiff has sufficiently demonstrated an outrage claim. Accordingly, defendants shall be denied summary judgment on this claim.

*Liability of Credithrift and Lindstrom on Tort Claims*

Defendants Credithrift and Lindstrom contend that liability cannot be imposed on them for plaintiff's claims of battery and negligence. The defendants have presented persuasive arguments on these claims, but we believe that the matters must be considered at trial in light of the many conflicting facts in the record.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is hereby granted in part and denied in part. Judgment shall be entered for the defendants and against the plaintiff on plaintiff's claim under the Kansas Act Against Discrimination. The remaining claims shall be considered at trial.

IT IS SO ORDERED.