**Mary WEST, Plaintiff,**

v.

**The BOEING COMPANY, Stan Guhr, Jim Nease, Jim Snelling, Charlie Rosendale, Don Minge, and Dave Berry, Defendants.**

**Civ. A. No. 92–1575–MLB.**

United States District Court, D. Kansas.

Jan. 5, 1994.

William L. Fry, Wichita, KS, for plaintiff Mary West.

Gaye B. Tibbets, Foulston & Siefkin, Wichita, KS, for defendants Boeing Co., Stan Guhr, Jim Nease, Jim Snelling, Charlie Rosendale, Don Minge and Dave Berry.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter comes before the court on defendant The Boeing Company's ("Boeing") and the individual defendants' (Guhr, Nease, Snelling, Rosendale, Minge, and Berry) respective motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 35 & 44).

Plaintiff Mary West is a white female who has been employed at Boeing for approximately 12 years. On November 24, 1992, she filed this civil action stating nine causes of action against Boeing and several of her fellow employees. She generally alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991, 42 U.S.C. §§ 1981 and 1981a, and the Equal Pay Act, 29 U.S.C. § 206(d). She also made state law claims for defamation, intentional infliction of emotional distress, tortious interference with contract, breach of public policy, and breach of contract. (Complaint, Doc. 1).

On January 15, 1993, the defendants moved for judgment on the pleadings. (Doc. 13). They contended that plaintiff's complaint was, as a whole, factually unsupportable, that her claim for violation of the Civil Rights Act of 1991 was too broad and vague to constitute a cause of action, and that her claim for breach of public policy failed to state a cause of action recognized by Kansas law. (Doc. 14). In response, plaintiff moved to amend her original complaint and submitted a proposed first amended complaint dropping her claim for tortious interference and setting forth additional facts in an effort to bolster her remaining claims. (Doc. 17). Plaintiff also argued that her claims for violation of the Civil Rights Act of 1991 and breach of public policy should be preserved. (Doc. 22). Defendants replied by further attacking plaintiff's complaint, asserting, in particular, that plaintiff's Title VII claim should be dismissed for failure to timely and properly exhaust her administrative remedies. (Doc. 26).

On March 22, 1993, the court issued an order finding plaintiff's complaint "wholly insufficient to satisfy the requirements of notice pleading," dismissing plaintiff's claims for breach of public policy and breach of contract, and denying plaintiff's motion to file and proceed upon a first amended complaint.

(Doc. 31, ¶¶ 1, 3, 7). The court did, however, grant plaintiff twenty days to file a *second* amended complaint. (Doc. 31, ¶ 4). The court's order directed plaintiff to (1) "set forth the identity of each individual defendant and what each is alleged to have done that wronged plaintiff"; (2) "properly plead the administrative status of her Title VII claim"; (3) "plead the statutory basis for her equal pay claims together with its factual predicate"; (4) "spell out the basis for claiming 42 U.S.C. 1981a creates a separate cause of action"; and (5) "specify the facts upon which she bases her claims of defamation and intentional infliction of emotional distress." (Doc. 31, ¶¶ 5–6).

Plaintiff subsequently filed a second amended complaint alleging five causes of action: (1) that *Boeing* violated Title VII; (2) that *Boeing* violated the Civil Rights Act of 1991, section 1981a; (3) that *Boeing* violated the Equal Pay Act; (4) that *Boeing* security personnel made "outrageous defamatory statements" about her; and (5) that *the individual defendants,* all employees of Boeing, engaged in "outrageous" harassing behavior causing her to experience "extreme emotional pain and physical injury." (Doc. 34). Plaintiff's fourth cause of action, her defamation claim, has subsequently been dismissed with prejudice. (Doc. 57). The defendants now move the court for an order dismissing most of the remaining causes of action. Specifically, defendant Boeing seeks an order completely dismissing plaintiff's claims under section 1981a and the Equal Pay Act and partially dismissing plaintiff's Title VII claims. The individual defendants, meanwhile, seek an order dismissing all of plaintiff's claims against them.

### STANDARDS FOR DISMISSAL

The standards governing a 12(b)(6) motion to dismiss for failure to state a claim are well established. The complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief.' " *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Bradley v. United States,* 951 F.2d 268, 270 (10th Cir.1991); *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). The court "must assume as true all well-pleaded facts, construing them in favor of the non-moving party." *Housing Auth. of the Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir. 1991).

### DEFENDANT BOEING'S MOTION TO DISMISS

Boeing seeks partial dismissal of plaintiff's claims under Title VII and complete dismissal of plaintiff's claims under section 1981a and the Equal Pay Act.

### I. *Partial Dismissal of Title VII Claim*

Plaintiff claims that Boeing violated Title VII by discriminating against her on the basis of her race, failing to promote her on the basis of her sex, subjecting her to a "work environment hostile to women," and retaliating against her because she opposed these discriminatory acts. (Doc. 34, ¶ 12). Boeing moves the court for an order dismissing plaintiff's Title VII claims predicated on allegations of racial discrimination and failure to promote. (Doc. 45, pp. 6–7).[1]

#### A. *Race discrimination*

According to Boeing, the only allegation plaintiff has presented in support of her race discrimination claim is that "it is her *opinion* that Boeing's EEO Department is operated in a manner that is itself discriminatory against white females." (Doc. 34, ¶ 27). Boeing contends that allegations of mere opinion are not sufficient to state a claim under Title VII. (Doc. 45, p. 6).

In response, plaintiff makes the *specific* allegation that, because plaintiff is white, a black employee in Boeing's Equal Employee Opportunity (EEO) department failed to respond to a complaint[2] plaintiff had submit-

---

[1] Boeing does not move for dismissal of plaintiff's Title VII claim based upon a hostile work environment due to sexual harassment and upon retaliation.

[2] The complaint concerned an incident which allegedly occurred on June 24, 1992, when another Boeing employee, defendant Jim Nease,

ted. The black employee is Sharai McConico, who has been named as a defendant in at least one other case filed by plaintiff's counsel against Boeing. Plaintiff claims that she will offer the testimony of a fellow employee concerning "the disparate treatment caucasian employees are afforded" at Boeing. (Doc. 47, p. 3). The fellow employee is another client of West's counsel who has a very similar case pending against Boeing, *Sloan v. Boeing, et al.*, No. 92 CV 1014.

■ The court agrees with Boeing that a bare allegation of *opinion* fails to state a claim under Title VII. However, the specific allegation set forth in plaintiff's response to Boeing's motion to dismiss would appear to be sufficient to state a claim of intentional racial discrimination under Title VII. Assuming this specific allegation is true, it could show "discrimination against [plaintiff] with respect to [her] ... privileges of employment, because of [her] race," in contravention of Title VII, 42 U.S.C. § 2000e–2(a)(1). Therefore, under the liberal federal pleading standards, it would be improper for the court to dismiss plaintiff's race discrimination claim at this stage of the litigation.

### B. *Sex discrimination*

■ Boeing seeks dismissal of plaintiff's Title VII sex discrimination claim predicated on the allegation that Boeing delayed plaintiff's promotion from a General Office ("GO") hourly employee to a Professional & Administrative ("P & A") salaried employee because of plaintiff's sex. Plaintiff admits that she was promoted to the P & A position effective July of 1990. Plaintiff contends that she filed a complaint alleging race and sex discrimination, as well as retaliation, with the Kansas Commission on Human Rights and with the EEOC on August 17, 1992. (Proposed Pretrial Order, p. 6, ¶ 3). The court accepts this contention as true.

Boeing argues that because plaintiff filed her administrative sex discrimination claim in August 1992, any allegedly discriminatory conduct, in order to be actionable, must have occurred within the 300–day period immediately preceding August 1992. 42 U.S.C.

came to her home and threatened plaintiff.

§ 2000e–5(e). According to Boeing, since plaintiff was promoted to the P & A position in July 1990, over 2 years before she filed her administrative claim, any alleged sex discrimination had to occur prior to July 1990, well outside the 300–day statutory period.

■ Plaintiff does not respond directly to Boeing's argument. Rather, she contends that her failure to promote claim is part of a "continuing violation," a series of discriminatory acts and a conspiracy of discrimination on the part of Boeing. (Doc. 47, p. 9). The "continuing violation" doctrine is simply not applicable to this case. That doctrine involves circumstances in which a series of connected violations occur both before and *during* the statutory period. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982) (holding discriminatory incidents which occur outside the limitations period are actionable "where a plaintiff ... challenges not just one incident ... but an unlawful practice that *continues into the limitations period*"); *Pitre v. Western Elec. Co., Inc.*, 975 F.2d 700, 705 (10th Cir.1992) ("If the plaintiff establishes a pattern of continuing discrimination beginning before the [applicable statutory] period and *extending into that period*, the plaintiff may recover for those earlier acts."). It does not make actionable an "isolated" or "unrelated" incident of discrimination that occurred outside that period. *Allen v. Denver Public School Bd.*, 928 F.2d 978, 984 (10th Cir.1991) (holding that because "non-promotion" claim involved an event unrelated to other alleged violations and occurred outside the statutory period, it was "prohibited as untimely"); *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 614 (10th Cir.1988); *E.E.O.C. v. Penton Indus. Publishing Co.*, 851 F.2d 835, 838 (6th Cir.1988); *see also Mathes v. Rice*, No. CIV. A. 91–6297, 1992 WL 181979, at *3 (10th Cir. July 29, 1992) (unpublished disposition) (holding "failure to promote" was an "isolated incident of discrimination, which is insufficient to prove a continuing violation").

■ Boeing's position is correct. Although plaintiff contends that sex discrimina-

(Proposed Pretrial Order, p. 10, ¶ 16).

tion[3] has been a way of life at Boeing for decades and continues even now, any alleged sex discrimination that *caused a delay in her promotion,* and hence constituted a violation of Title VII, had to occur *before* July 1990. Boeing's allegedly discriminatory failure to promote plaintiff during and prior to 1990 involves a "past event which has no present legal significance" even if that event had a continuing effect on the plaintiff and "might at one time have justified a valid claim against the employer." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 560, 97 S.Ct. 1885, 1890, 52 L.Ed.2d 571 (1977).

Accordingly, plaintiff's Title VII claim based on Boeing's allegedly discriminatory failure to promote plaintiff because of her sex is untimely and must be dismissed.

## II. *Complete Dismissal of Plaintiff's Equal Pay Act Claim*

██ Boeing seeks complete dismissal of plaintiff's Equal Pay Act claim for reasons similar to those concerning dismissal of plaintiff's "failure to promote" claim. Boeing contends that plaintiff's Equal Pay Act claim is barred by the applicable two-year statute of limitations, 29 U.S.C. § 255(a). According to Boeing, plaintiff's Equal Pay claim is based on the allegation that although she was "doing the same job" as a male counterpart, Marvin Penninger, she was not receiving the same pay. (Doc. 35, ¶¶ 15, 40). Plaintiff does not dispute that Mr. Penninger was promoted in May of 1989, more than three years before plaintiff's suit was filed, and thus Mr. Penninger and the plaintiff were no longer "doing the same job" during the two years preceding the date upon which plaintiff filed suit. Hence, Boeing argues that plaintiff's claim rests solely on conduct that occurred outside the statutory period and should therefore be dismissed. (Doc. 45, pp. 8–9). In response, plaintiff appears to argue that her Equal Pay claim, like her Title VII "failure to promote" claim, involves a "continuing violation" for which there are no "strict time limitations." (Doc. 47, p. 10).

The court agrees with Boeing's argument. Assuming the truth of plaintiff's allegation of unequal pay—that is, that plaintiff did the same work but did not receive the same pay as Mr. Penninger—it is nevertheless clear that that discriminatory act occurred well outside the two-year period prior to plaintiff's filing her Equal Pay claim.

Accordingly, plaintiff's Equal Pay claim will be dismissed.

## III. *Complete Dismissal of Plaintiff's § 1981a Claim*

██ Finally, Boeing contends that plaintiff's claim under 42 U.S.C. § 1981a should be dismissed because that statute, contrary to plaintiff's assertions, provides no "substantive cause of action" and, at any rate, addresses only race-based, not gender-based, discrimination. (Doc. 45, pp. 7–8). Plaintiff contends, based on § 1981a's legislative history, that § 1981a does in fact involve substantive rights and impliedly provides for a separate cause of action thereunder. (Doc. 47, pp. 3–10).

The Supreme Court has shown increasing reluctance to find that a federal statute impliedly creates a cause of action in the absence of *clear* evidence of congressional intent to do so in the statute's "context, language, and history." *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). In this case, the court perceives no *clear* evidence in the "context, language, or history" of section 1981a for inferring that Congress intended to create a private right of action thereunder. Section 1981a merely clarifies and adds to the damages available to a plaintiff who shows, under Title VII, that she was the victim of intentional discrimination in employment. It does not, either expressly or impliedly, create an additional cause of action for employment discrimination plaintiffs.

## *INDIVIDUAL DEFENDANTS' MOTION TO DISMISS*

██ Plaintiff's fifth cause of action seeks recovery from the individual defendants, as

---

**3.** In actuality, plaintiff's counsels' claims against Boeing on behalf of their clients are quite flexible. If the plaintiff is male, then the claim is that Boeing discriminates against males. If, as here, the plaintiff is white, then the claim is that Boeing discriminates against whites. On the other hand, if the plaintiff is black, the claim is that Boeing discriminates against blacks.

well as Boeing, for "outrageous" conduct that caused her "extreme emotional pain and physical injury." (Doc. 34, p. 16). Plaintiff makes the following specific allegations of fact in support of this cause of action: (1) That up through October 1990, defendant *Guhr* "made constant demeaning, disparaging remarks"; in 1985, Guhr "crawled under [plaintiff's] dress and looked up it"; in 1989, he "bit another female employee . . . on the breast"; (2) that defendant *Nease* "also constantly made demeaning, offensive, derogatory sexual remarks to Plaintiff, often displaying a copy of Playboy" and, in June 1992, "came to her home [while] intoxicated and threatened her job"; (3) that, despite promising to do so, defendants *Snelling* and *Rosendale* failed to investigate plaintiff's complaints concerning defendant Nease making an uninvited visit to her home; (4) that defendant *Minge* (plaintiff's supervisor) "deceived Plaintiff for 3 years into believing that he would help her advance to management" and "scrutinized Plaintiff in a manner that was different from other employees, causing

her embarrassment and stress"; and (5) that defendant *Berry* (a superintendent at Boeing and head of the department where plaintiff worked) "did nothing to address the sexual discrimination and sexual harassment and abuse within the department, even though he had the power to do so." (Doc. 34, pp. 14–15; Proposed Pretrial Order, ¶¶ 46–51).

The individual defendants collectively move the court for an order dismissing all of plaintiff's claims against them. (Doc. 35). They contend that plaintiff's fifth cause of action is "an undefined and incoherent claim" and that plaintiff has not, as required by the court's March 22 order, designated specific *actionable* conduct on the part of each defendant sufficient to state a claim upon which relief can be granted.

In response, plaintiff asserts that her cause of action against the individual defendants, as set forth in her second amended complaint, is sufficiently supported by her factual allegations and meets the minimal requirements of notice pleading.[4] According

---

4. Plaintiff contends that the requirements of the court's March 22 order constitute an abuse of discretion and violate the Tenth Circuit's decision in *Mountain View Pharmacy v. Abbott Laboratories*, 630 F.2d 1383 (1980), an antitrust case in which the court found that the district court abused its discretion by conditioning leave to amend on plaintiffs' filing a factual certificate containing "sworn statements setting forth all facts" supporting their claims. The Tenth Circuit held that this procedure violated Rule 8(a), Fed.R.Civ.P. but nonetheless found the majority of the proposed amended complaint to be inadequate under that rule.

Plaintiff's original complaint, which named Boeing and individual defendants, was based upon generalized and largely undifferentiated allegations. Defendants moved for judgment on the pleadings, citing the overbroad and non-specific nature of the allegations of plaintiff's complaint (Doc. 13). Plaintiff, in response, did not defend the adequacy of her original complaint but rather sought leave to file a first amended complaint. (Doc. 17). The court held a hearing and determined, after hearing the statements and arguments of counsel, that if it allowed plaintiff to file her proposed first amended complaint, that pleading too would be subject to challenge for essentially the same reasons as those pertaining to the original complaint. Based upon the court's experience with counsel in similar cases, e.g., *Atkins v. The Boeing Company, et al.*, No. CIV. A. 91–1404, 1993 WL 186170 (D.Kan. May 5, 1993), the court knew that by allowing the amendment, it would.be letting itself in for one

or more additional rounds of motions to dismiss and for leave to amend. In the belief that both the letter and *spirit* of Federal Rules of Civil Procedure 8 and 15 should be served, along with the admonition of Rule 1, as amended, and that the rules are to be construed *and administered* to secure the just, speedy and inexpensive determination of cases, the court entered its order of April 6, 1993. (Doc. 31). That order permitted plaintiff to file a second amended complaint under the conditions which plaintiff now contends are an abuse of discretion.

The court does not view its actions as an abuse of discretion. It did not dismiss plaintiff's original complaint, which certainly was a realistic option. Rather it allowed plaintiff to amend her complaint. The requirements placed upon plaintiff were not onerous. She was not required to provide the sworn and detailed factual statement with which the court found fault in *Mountain View*. Essentially all the court required of plaintiff was some additional specificity which would allow both the court and the defendants to better understand and deal with the nature of plaintiff's many allegations.

This court has great respect for decisions of the Tenth Circuit, no matter when opinions were filed. *Mountain View*, decided in 1980, undoubtedly remains good law, but it is limited to its facts. It did not and does not stand for the proposition that any control by the court over the allegations of a complaint constitutes an abuse of discretion. Nor can it be read to say that the "short and plain statement" language of Rule 8 authorizes vague claims against multiple defen-

to plaintiff, the individual defendants are well aware of their outrageous conduct forming the factual basis of her cause of action against them.

■■■■ The torts of outrage or intentional infliction of emotional distress have been clearly defined by the Kansas Supreme Court:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. Proof of four elements is required to establish the cause of action: (1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe.

> Liability for extreme emotional distress has two threshold requirements which must be met and which *the court* must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

*Roberts v. Saylor,* 230 Kan. 289, 292–93, 637 P.2d 1175 (1981) (citations omitted) (emphasis added). Although "[n]o bodily harm to the plaintiff is required to support such an action," "liability may only be found in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* "[L]iability does not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities." *Id.* at 293, 637 P.2d 1175. "Members of the public are necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind." *Id.*

In applying these standards, "[t]he overwhelming majority of Kansas cases have held in favor of defendants on the outrage issue, finding that the alleged conduct was insufficiently 'outrageous' to support the cause of action." *Lindemuth v. Goodyear Tire and Rubber Co.,* 864 P.2d 744 (Kan.App.1993) (string citing past Kansas cases with explanatory parentheticals). Moreover, "Kansas courts have been [particularly] reluctant to extend the outrage cause of action to ... claims of sexual harassment, arising in the employment setting." *Laughinghouse v. Risser,* 754 F.Supp. 836, 843 (D.Kan.1990) (string citing a number of cases).[5] For example, in *Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499, 1505–09 (D.Kan. 1993)

dants which, whether made intentionally or merely sloppily, require inordinate expenditure of judicial resources to differentiate so that the case may be handled in an orderly manner consistent with *all* the rules, not merely those relating to notice pleading.

Finally, at least some consideration must be given to post–1980 developments such as the Civil Justice Reform Act of 1990, 28 U.S.C. §§ 471 *et seq.,* which suggests more active involvement by Article III judges to ensure speedier processing of civil cases. This was one of the court's objectives when it required plaintiff to be more specific. Although it may be that, as a result of specificity, many of plaintiff's claims must be dismissed prior to trial, this result is, in all respects, fair and just. This court, as most courts, has too many cases to allow unworthy claims to remain hidden behind a smoke screen of irrelevant facts and legally-insupportable theories.

5. There are, in fact, only a few reported Kansas cases in which the question of whether a defendant's behavior was sufficiently outrageous was allowed to go to the jury, and those cases involved highly shocking and egregious conduct. *See, e.g., Taiwo v. Vu,* 249 Kan. 585, 593, 822 P.2d 1024 (1991) (defendant assaulted, battered, falsely imprisoned, falsely accused, and induced an employee to falsely accuse the plaintiffs); *Laughinghouse v. Risser,* 754 F.Supp. 836, 843 (D.Kan.1990) (defendant continually harassed plaintiff over a two-year period, including "screaming and cursing," "unwanted touchings and sexual comments," and "fits of rage which included throwing things and tearing up files," because plaintiff would not sleep with defendant); *Gomez v. Hug,* 7 Kan.App.2d 603, 604–05, 645 P.2d 916 (1982) (defendant employer verbally accosted plaintiff employee with vulgar racial slurs, grossly offensive insults, and intense threats of violence over a period of several days).

(O'Connor, J.), a case quite similar to the present one, the plaintiffs, who were husband and wife, alleged intentional infliction of severe emotional distress by a number of their co-workers who had allegedly engaged in sexual harassment, condonation of sexual harassment, and retaliation for opposition to sexual harassment. The only allegation involving direct acts of sexual harassment was that one supervisory co-worker "while putting eyedrops in the plaintiff's [wife's] eye, told her that he did not want it to turn into a wet T-shirt contest." *Id.* at 1507. The court held that "even if this comment [was] sexual harassment, it [was] a far cry from being extreme and outrageous." *Id.* With respect to plaintiff's other allegations, the court found that it was "unable to conclude that the conduct of the defendants was sufficiently outrageous to permit recovery in tort beyond the standard action for employment discrimination." *Id.* at 1508. The court accordingly directed summary judgment on the various intentional infliction of emotional distress claims.

In the present case, the court finds that the alleged conduct of defendants Nease, Snelling, Rosendale, Minge, and Berry, like the alleged conduct in *Anspach,* is simply not sufficiently "outrageous" to support an intentional infliction of emotional distress or outrage claim against the individual defendants. Even accepting the allegations as true, none of the acts alleged to have been committed by any of these five defendants are "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Roberts,* 230 Kan. at 293, 637 P.2d 1175. The conduct which plaintiff has alleged occurred—namely, failing to responsively investigate sexual harassment charges, deceiving plaintiff into thinking she would be promoted, embarrassing her by treating her differently from her co-workers, and, in the case of defendant Nease, threatening to get her fired—while inappropriate, is "a far cry from being extreme and outrageous." *Anspach,* 817 F.Supp. at 1507.

Plaintiff argues, on the basis of *Laughinghouse v. Risser,* 754 F.Supp. 836 (D.Kan. 1990), that her claims against these defendants should be sustained. *Laughinghouse,* however, as footnoted *supra,* involved "evidence that [the plaintiff] was continually harassed and abused by [the defendant] over a two-year period in part due to her failure to agree to spend the night with the defendant." *Id.* at 843. The "harassment and abuse" included actions involving "screaming and cursing," "unwanted touchings and sexual comments," and "fits of rage which included throwing things and tearing up files." *Id.* The alleged actions of defendants Nease, Snelling, Rosendale, Minge, and Berry do not rise to this level. Accordingly, plaintiff's claims against these defendants will be dismissed.

Plaintiff's allegations against Guhr, on the other hand, *are* comparable to those at issue in the *Laughinghouse* case. According to plaintiff, Guhr constantly made disparaging sexual remarks and engaged in grossly offensive behavior, including an incident in which Guhr looked up her dress.[6] In the court's view, a reasonable jury could conceivably find such conduct "beyond the bounds of decency," "atrocious," and "intolerable," and consider the distress these actions inflicted on plaintiff—which, at this point, is still somewhat unclear—"so severe that no reasonable person should be expected to endure it." *Roberts,* 230 Kan. at 292–93, 637 P.2d 1175. Defendant Guhr argues that the *Anspach* case, discussed *supra,* counsels toward dismissal of plaintiff's claim. Clearly, however, a distinction can be made between the "wet T-shirt" comment at issue in *Anspach* and the alleged conduct at issue in the present case. Plaintiff's allegations against Guhr, unlike those asserted against the defendant in *Anspach,* involve both verbal *and physical* acts of shockingly insensitive character. In any event, this court is unwilling to say that the unwanted act of crawling under and looking up a woman's dress is not an extreme and outrageous act. Assuming the complete truth of plaintiff's allegations against Guhr, as the court is required to do, it does not

---

**6.** Plaintiff points to the depositions of several witnesses and other victims of sexually harassing conduct on the part of defendant Guhr as substantiating her allegations against him.

"appear beyond doubt" that plaintiff could not prevail on the facts alleged. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

However, Guhr has presented an alternative argument for dismissal of plaintiff's claim against him. According to Guhr, plaintiff has been deposed since the filing of her second amended complaint and, during her deposition, indicated that the only conduct upon which her claim against defendant Guhr is based occurred prior to his promotion in the fall of 1990, more than two years before plaintiff's original complaint was filed. (Doc. 35, pp. 4–6). This argument relies on matter outside the parties' pleadings and, therefore, must be treated as a motion for summary judgment. Fed.R.Civ.P. 12(b); *Hall v. Bellman*, 935 F.2d at 1109. Under summary judgment standards, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Shapolia v. Los Alamos Nat'l Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993).

Plaintiff has not seen fit to address defendant Guhr's statute of limitations argument in any of her responses to defendants' motion. (Doc. 46, pp. 1–2). Her failure to do so is unexplained. While the court believes it would be legally appropriate to grant summary judgment in view of plaintiff's failure to make a proper response, it will refrain from doing so, anticipating that Guhr will reassert his position in a forthcoming motion pursuant to Rule 56, Fed.R.Civ.P. See, *infra*.

**IT IS ACCORDINGLY ORDERED** that defendant Boeing's motion to dismiss (Doc. 44) is granted with respect to plaintiff's Title VII sex discrimination "failure to promote," section 1981a, and Equal Pay Act claims. Boeing's motion to dismiss plaintiff's Title VII race discrimination claim is denied.

It is further ordered that defendants Nease, Snelling, Rosendale, Minge, and Berry's motion to dismiss (Doc. 35) is hereby granted. Defendant Guhr's motion to dismiss (Doc. 35) is denied.

It is further ordered that the parties shall redraw the proposed pretrial order to reflect and conform to the rulings made herein. The redrafted order shall be submitted for the court's consideration by January 31, 1994. All motions for summary judgment shall be filed no later than February 25, 1994 with responses to be filed in accordance with the rules.

Motions for reconsideration of this order are not encouraged and, if filed, will not stay the other deadlines set forth herein. Any motion for reconsideration and any response thereto shall not exceed 5 pages. No reply shall be permitted.

IT IS SO ORDERED.