William Adrian BUTLER, Plaintiff,

v.

CITY OF PRAIRIE VILLAGE,
et al, Defendants.

No. 96–2045–JWL.

United States District Court,
D. Kansas.

Aug. 25, 1997.

G. Gordon Atcheson, Blake & Uhling, P.A., Kansas City, KS, for William Adrian Butler.

Charles E. Wetzler, David C. Wetzler, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Mark D. Katz, David S. Baker, Sherman, Taff & Bangert, P.C., Kansas City, MO, for Prairie Village, City of Kansas, H. Monroe Taliaferro, Jr.,

Carol Pendleton, Chairman of Policy and Services Committee, Jerald R. Robnett.

Charles E. Wetzler, David C. Wetzler, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, for Barbara J. Vernon.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction.

This employment discrimination case comes before the court on the defendants' motions for summary judgment (Doc. # 130 and # 133) and to strike the plaintiff's affidavit (Doc. # 153). In the Pretrial Order (Doc. # 122), the plaintiff asserts that Defendant City of Prairie Village (1) harassed and terminated him in violation of Kansas common law for testifying truthfully in an arbitration and for blowing the whistle on the misuse of municipal property, (2) harassed and terminated the plaintiff for exercising his First Amendment Free Speech rights as protected under 42 U.S.C. § 1983, (3) deprived the plaintiff of his protected due process property interest in his continued employment when it terminated him in violation 42 U.S.C. § 1983, (4) denied the plaintiff reasonable accommodation and harassed and eventually terminated him in retaliation for requesting reasonable accommodation in violation of the Americans with Disabilities Act (ADA), and (5) replaced the plaintiff with and/or re-assigned the plaintiff's duties to younger individuals in violation of the Age Discrimination in Employment Act (ADEA). After the court ruled on the individual defendants' motions for judgment on the pleadings, see Butler v. City of Prairie Village, 961 F.Supp. 1470 (D.Kan.1997), the plaintiff's remaining claims against the individual defendants allege that the individual defendants (1) harassed and terminated the plaintiff for exercising his First Amendment Free Speech rights as protected under 42 U.S.C. § 1983, (2) engaged in outrageous conduct toward the plaintiff, and (3) unlawfully conspired to deprive the plaintiff of his rights protected by the U.S. Constitution, the ADA, and the ADEA. In their summary judgment motions, the defendants argue that the plaintiff has failed to produce sufficient evidence to preclude summary judgment on all of his claims.

For the reasons discussed below, the court grants the defendants' motion to strike with respect to the plaintiff's conclusory statement in paragraph 8 of his affidavit and denies it on all issues and grants the defendants' summary judgment motions.

### II. Motion to strike.

#### A. Standard.

An affidavit submitted in support of or in opposition to a summary judgment motion may not offer conclusory allegations. Nichols v. Hurley, 921 F.2d 1101, 1114 (10th Cir.1990). Fed.R.Civ.Pro. 56 demands something more specific than the bald assertion of the general truth of a particular matter; rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted. See Hadley v. County of Du Page, 715 F.2d 1238, 1243 (7th Cir.1983), cert. denied, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984). An affidavit submitted in support of or in opposition to a summary judgment motion, which is contrary to the prior sworn statements of the affiant, is not admissible if the court determines that the purpose of the subsequent affidavit is to create a sham fact issue. Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir.1986). The Franks court also instructed that the following factors were relevant in the determination of a sham fact issue: (1) whether the affiant was cross-examined during his or her earlier testimony; (2) whether the affiant had access to the pertinent evidence at the time of his or her earlier testimony or whether the affidavit was based on newly discovered evidence; and (4) whether the earlier testimony reflects confusion which the affidavit attempts to explain. Id. at 1237.

#### B. Analysis.

The defendants request that the court strike the portions of the plaintiff's affidavit which contain conclusory allegations or allegations that are in conflict with or impermissibly add to prior discovery responses and pleadings. Specifically, the defendants argue (1) that paragraph 6 of the plaintiff's affidavit, which discusses an alleged conversation between the plaintiff and Defendant Jerald

Robnett in late March or early April of 1993 during which the plaintiff purportedly requested and was denied accommodation for his disability, should be stricken because it was not previously disclosed in his answer to Interrogatory No. 10, which asked him to identify each and every action by the defendants which he believes constitutes disability discrimination; (2) that paragraph 8 of the plaintiff's affidavit, which asserts that Defendant Barbara Vernon gave him assignments with unrealistically short completion deadlines at least two or three times a week, should be stricken because it is an improper conclusory allegation and constitutes a new allegation not found in the plaintiff's response to Interrogatory No. 10; (3) that paragraph 9 of the plaintiff's affidavit should be stricken because it constitutes a new allegation not found in the plaintiff's response to Interrogatory No. 10, his deposition, or the Pretrial Order; (4) that paragraphs 2, 3, 4, and 5 of the plaintiff's affidavit, which discuss the purported adverse arbitration testimony the plaintiff contends led, in part, to his termination in violation of his First Amendment rights and Kansas public policy, should be stricken because once the defendants raised their qualified immunity defense, the plaintiff was required to disclose the content of his arbitration testimony pursuant to a heightened pleading standard created by their raising of a qualified immunity defense; and (5) that paragraph 3 of the plaintiff's affidavit should also be stricken because it contains conclusory allegations.

In response, the plaintiff argues (1) that paragraph 6 of his affidavit is relevant only to rebut the defendants' assertion in their summary judgment papers that Defendant Robnett was unaware that the plaintiff suffered from a disability (clinical depression) making him eligible for an accommodation under the ADA; (2) that the conversation discussed in paragraph 6 of his affidavit was properly not mentioned in the plaintiff's response to Interrogatory No. 10 because Defendant Robnett's refusal occurred before the plaintiff revealed his disability and, therefore, that refusal is not actionable under the ADA; (3) that if the defendants wanted to know whether the plaintiff had told a representative of the City of Prairie Village that he suffered from a disability that re-

quired an accommodation, the defendants could have posed such an interrogatory and/or asked such a question at the plaintiff's deposition; (4) that paragraph 8 of his affidavit is proper because his response to Interrogatory No. 10 indicates that Defendant Vernon used his work assignments as a tool to discriminate against him and because the averment is based on the plaintiff's personal knowledge, not a conclusory allegation; (5) that paragraph 9 of his affidavit is proper because the defendants fail to demonstrate how averments in paragraph 9 conflict with the plaintiff's prior deposition testimony and because the Pretrial Order is not intended to contain each and every fact that 'may be offered at trial; and (6) that paragraphs 2, 3, 4, and 5 of his affidavit are relevant to establishing that the defendants reasonably could have inferred that the plaintiff's arbitration testimony was adverse to Defendant City of Prairie Village's interest.

■ With respect to paragraphs 2, 3, 4, and 5 of the plaintiff's affidavit, the court denies the defendants' motion because the plaintiff is offering the evidence for the limited purpose of establishing whether the defendants reasonably could have inferred that the plaintiff's arbitration testimony was adverse to Defendant City of Prairie Village's interests. The specific nature of the plaintiff's arbitration testimony, which is what the defendants contend should have been previously disclosed, is not really pertinent to the disposition of the plaintiff's First Amendment claim based on his arbitration testimony because it is uncontroverted that none of the defendants have personal knowledge of the plaintiff's arbitration testimony. However, as the plaintiff correctly points out, it is of some relevance what the defendants may have inferred from the circumstances presented in paragraphs 2, 3, 4, and 5 of the plaintiff's affidavit.

■ With respect to Paragraph 6 of the plaintiff's affidavit, the court denies the defendants' motion because the plaintiff is offering the alleged conversation for a limited purpose, which was not within the scope of Interrogatory No. 10. Moreover, if they were not satisfied with the vagueness of plaintiff's response, the defendants should have filed a motion to compel a more specific

answer to Interrogatory No. 10 long ago. Furthermore, the plaintiff correctly points out that if the defendants wanted to know whether the plaintiff had informed a representative of the City of Prairie Village that he suffered from a disability that required accommodation, the defendants could have posed such an interrogatory and/or asked such a question during the plaintiff's deposition.

■ Paragraph 8 of the plaintiff's affidavit presents the most difficult issue. The plaintiff's response to Interrogatory No. 10 generally indicated that he had more work than he could do in the time allotted. If the defendants had desired to pursue the frequency of this occurrence via other discovery tools, they could have. As a result, the court denies the defendants' motion on that basis. Thus, the court is now left to deal with the conclusory nature of the paragraph, which is primarily created by the plaintiff's use of the word "unrealistically" to describe his work deadlines. In order for the plaintiff to be able to assert that he was given "unrealistically" short work-deadlines two to three times a week, his affidavit must cite concrete facts establishing such a conclusion. *Hadley,* 715 F.2d at 1243. The plaintiff's affidavit contains only one description of such an occurrence in paragraph 9. One example is insufficient to establish such a conclusion. *Id.* As a result, the court grants the defendants' motion to strike with respect to his unsupported conclusory allegation in paragraph 8 that he was given "unrealistically" short work-deadlines two to three times a week. *Id.*

■ With respect to paragraph 9 of the plaintiff's affidavit, the court denies the defendants' motion because the defendants have failed to demonstrate that the plaintiff's deposition testimony conflicts with paragraph 9, because the court believes that the Pretrial Order is not intended to contain each and every fact that may be offered at trial, and, similar to paragraph 8, because the plaintiff's

response to Interrogatory No. 10 generally indicated that he had more work than he could do in the time allotted. Again, had the defendants wished to pursue the details of the plaintiff's general response to Interrogatory No. 10, they could have.

### III. Facts.[1]

During the relevant time period, Defendant H. Monroe Taliaferro, Jr. was the Mayor of the City of Prairie Village, Defendant Barbara Vernon was the City Administrator of the City of Prairie Village, Defendant Carol Pendleton was a member of the Prairie Village City Council and chair of the Policy and Services Committee, and Defendant Jerald Robnett was the director of the City of Prairie Village's Public Works Department. On September 18, 1987, the plaintiff formally applied with Defendant City of Prairie Village for a position in its Public Works Department. Shortly thereafter, Defendant City of Prairie Village hired the plaintiff as an assistant project coordinator.

In the fall of 1992, Mr. Jim Nixon, a city mechanic, told the plaintiff about disappearing inventory (police tires). The plaintiff encouraged Mr. Nixon to report his observation to Defendant Robnett. After he reported his observation to Defendant Robnett, Mr. Nixon told the plaintiff that Defendant Robnett was going to "look into it." The plaintiff contends that he personally told Defendant Vernon about the missing inventory on two occasions sometime in the fall of 1993 and personally brought up the subject of the missing inventory to Defendant Robnett during numerous staff meetings.[2]

In November of 1992, the plaintiff testified under oath at an arbitration proceeding involving Defendant City of Prairie Village and one of its contractors. The plaintiff's testimony was contrary to Defendant City of Prairie Village's best interests. At the conclusion of the arbitration, the arbitrator found in favor of the contractor and awarded the contractor $209,836.41. At a subsequent

1. The following facts are either uncontroverted, or viewed in a light most favorable to the plaintiff.

2. Neither Defendant Robnett nor Defendant Vernon recall the plaintiff mentioning the disappearing inventory to them. Moreover, Defendant

Robnett left his position with Defendant City of Prairie Village on September 15, 1993. Therefore, any communications between the plaintiff and Defendant Robnett concerning the disappearance of inventory must have occurred on or before September 15, 1993.

**1394**

staff meeting, Defendants Robnett, Vernon, and Taliaferro, as well as others, discussed the outcome of the arbitration and expressed their disappointment. Sometime thereafter, Defendant Robnett mentioned the outcome of the arbitration to the plaintiff and the plaintiff responded with a "dry grin" and stated, "Yes, I understand that is the case." Defendant Robnett concluded that the plaintiff was "encouraged" by the result of the arbitration. However, there is no evidence indicating that any of the defendants were aware of the content of the plaintiff's arbitration testimony.

In May of 1993, the plaintiff informed Defendant Robnett that he could only work forty hours per week due to his mental health. In support of his request for a forty hour work week, the plaintiff gave Defendant Robnett a letter dated May 6, 1993, from Dr. Lee Forge, the plaintiff's psychologist. In his letter, Dr. Forge stated that the plaintiff "... should generally limit himself to a forty hour per week workload," because when he works excessively long hours, the plaintiff "... becomes overstressed and consequently less productive." After receiving Dr. Forge's letter, Defendant Robnett met with the plaintiff weekly to review the plaintiff's work and progress. Defendant Robnett tried to split the work up between them in order to ensure the timely completion of the work. However, Defendant Robnett did not believe that the plaintiff was "holding up his end," and reminded him of this on numerous occasions.

In mid-September, Defendant Robnett resigned and Defendant Vernon temporarily took over Defendant Robnett's public works duties while a search was conducted to find a new Director of the Public Works Department.[3] During her first week as acting director, Defendant Vernon met with the plaintiff to discuss his work load. The plaintiff told Defendant Vernon that he had more work than he could handle. The plaintiff also asked Defendant Vernon to take over certain contracts because she had already been dealing with the contractors. Defendant Vernon granted the plaintiff's request.

The evidence indicates that the relationship between Defendant Vernon and the plaintiff was not amicable. The plaintiff tape recorded all of their meetings because he did not trust her. He resented Defendant Vernon's request that all office staff, including the plaintiff, provide her with logged time sheets describing their work activities. The plaintiff often failed to turn in his time logs or failed to provide adequate information from which Defendant Vernon could determine what the plaintiff was doing. At some point, Defendant Vernon attempted to prioritize the plaintiff's work because he was not, in her opinion, getting his work done in a timely fashion. As a result of the plaintiff's failure to complete his work in a timely fashion, Defendant Vernon personally took on and finished the plaintiff's unattended work duties. At this point, Defendant Vernon began to question whether the plaintiff's position was necessary. Defendant Vernon began to question the necessity of the plaintiff's position even more when the department functioned fine during the plaintiff's numerous absences in September and October of 1993, due to health problems.

Starting in October of 1993, Defendant Vernon began disciplining the plaintiff for insubordination. On November 30, 1993, Defendant Vernon gave the plaintiff a written performance evaluation prepared by Defendant Robnett and an undated written evaluation she prepared. Both evaluations indicated that the plaintiff needed improvement in every category listed. On December 10, 1993, Defendant Vernon gave the plaintiff a disciplinary warning for the plaintiff's allegedly threatening conduct and remarks during their November 30 meeting and suspended the plaintiff for two days. Upon receiving one of Defendant Vernon's disciplinary actions, the plaintiff stated to Defendant Vernon, "I know why you are doing this now—it's for my testifying in that lawsuit which the city ultimately lost." Defendant Vernon was startled and intimidated by the plaintiff's accusation.[4] Her only verbal response was to laugh.

---

**3.** It is uncontroverted that the plaintiff never worked more than forty hours in one week during Defendant Vernon's tenure.

**4.** Defendant Vernon never reported that she perceived the plaintiff's conduct or remarks at their November 30 meeting to be threatening.

On December 3, 1993, the plaintiff delivered a memo to Defendant Taliaferro alleging that Defendant Vernon was harassing him. The plaintiff asserted that Defendant Vernon's management style had created a hostile, intimidating, and offensive work environment. Shortly after receiving the plaintiff's memo, Defendant Taliaferro provided the plaintiff with a document entitled "Harassment Investigation," which sought responses to questions by December 8, 1993. The plaintiff requested and was granted an extension of time to complete the document. On January 18, 1994, the plaintiff submitted a lengthy memo to Defendant Taliaferro responding to the questions in the Harassment Investigation document.[5] Defendant Taliaferro assigned the investigation of the plaintiff's harassment complaint to Mr. Tom Lewinsohn, the director of personnel for the City of Prairie Village. During his investigation, Mr. Lewinsohn did not interview the plaintiff or Defendant Vernon. On January 25, 1994, Defendant Taliaferro issued a written response to the plaintiff's harassment complaint concluding that there was no factual basis to support the plaintiff's claim against Defendant Vernon.

By early January of 1994, Defendant Vernon began considering a reorganization of the Public Works Department. Around this time, Defendant Vernon discussed the reorganization with a city consultant and indicated that she believed a sharp Director of the Public Works Department could perform all the functions of the directors and assistant directors. On January 18, 1994, Defendant Vernon announced at a city council meeting that she was reorganizing the Public Works Department. Her reorganization involved doing away with the assistant director position and hiring a Public Works Director who could perform all of the necessary functions. It also involved the elimination of seven other positions. Of the nine positions eliminated, only the plaintiff's position was currently occupied. On January 27, 1994, Defendant Vernon hand-delivered to the plaintiff a letter informing him, among other things, that his position had been eliminated.

---

5. Defendant Taliaferro forwarded the plaintiff's memo to Defendant Vernon. There is no evi-

*IV. Motions for summary judgment.*

*A. Summary judgment standard.*

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.Pro. 56(c); *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2554–55.

*B. City of Prairie Village.*

*1. Whistleblower and truthful testimony claims.*

■ Defendant City of Prairie Village moves for summary judgment on the plaintiff's whistleblower and truthful testimony claims based on the same reasoning the court previously granted the individual defendants summary judgment on those claims, i.e., that

dence Defendant Vernon ever received it.

the plaintiff's whistleblower and truthful testimony claims are barred under the "no other remedy available" test because the plaintiff's § 1983 Free Speech claim has the same factual basis as these state common law claims. *See Butler v. City of Prairie Village*, 961 F.Supp. 1470, 1473–74 (D.Kan.1997). In response, the plaintiff refers the court to the relevant arguments in his memorandum in opposition to the individual defendants' motion to dismiss. The court rejected those arguments as they applied to the individual defendants in its previous order. *Id.* The plaintiff offers no argument indicating that Defendant City of Prairie Village should not also be entitled to the benefits of the "no other remedy available" test. As a result, the court concludes that the plaintiff's whistleblower and truthful testimony claims against Defendant Prairie Village are barred by the "no other remedy available" test due to the fact that the plaintiff's § 1983 First Amendment Free Speech claim has the same factual basis. *Id.* at 1474 (citing *Harris*, 757 F.Supp. at 1993–94). As a result, the court grants Defendant City of Prairie Village summary judgment on the plaintiff's whistleblower and truthful testimony claims. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

### 2. First Amendment claim.[6]

The plaintiff alleges that the defendants violated his right to free speech under the First Amendment to the U.S. Constitution when they purportedly terminated him for reporting a theft in his department and for testifying truthfully in an arbitration hearing involving Defendant City of Prairie Village and one of its contractors. In their defense, the defendants claim both absolute and qualified immunity.

### a. Absolute Immunity.

### i. Standard.

■ Absolute immunity applies to local officials performing legislative functions. *Figures v. Bd. of Pub. Utils. of Kansas City, Kan.*, 731 F.Supp. 1479, 1483 (D.Kan.1990)(O'Connor, C.J.). This immunity is "premised upon the need for an inde-

pendent legislative branch, free from the coercion of restraint imposed by inquiry from other governmental authority, as well as from the time consuming problem of legislators having to defend their actions in court." *Id.* (citing *Agromayor v. Colberg*, 738 F.2d 55, 58 (1st Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 405 (1984)). Immunity "attaches to particular official functions, not to particular offices," *Westfall v. Erwin*, 484 U.S. 292, 296 n. 3, 108 S.Ct. 580, 583 n. 3, 98 L.Ed.2d 619 (1988), and such immunity "flows not from rank or title or 'location within the Government,' . . . but from the nature of the responsibilities of the individual official." *Cleavinger v. Saxner*, 474 U.S. 193, 197, 106 S.Ct. 496, 498–99, 88 L.Ed.2d 507 (1985). The question then is whether the action of firing the plaintiff was a legislative or administrative function. *Ditch v. Bd. of County Comm'rs of County of Shawnee, Kan.*, 650 F.Supp. 1245, 1248 (D.Kan.1986). If the defendants were acting in a legislative capacity, they are entitled to absolute immunity. *Figures*, 731 F.Supp. at 1483 (citing *Haskell v. Washington Township*, 864 F.2d 1266, 1277 (6th Cir.1988)). If, on the other hand, their conduct was administrative in nature, then only qualified immunity is available. *Id.* "Moreover, absolute immunity does not extend to even traditionally legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests." *Id.*

### ii. Analysis.

■ Construing the evidence in a light most favorable to the plaintiff, the court concludes that the defendants are not entitled to absolute immunity from either claim. Both sides correctly point out that this is an issue that has not been addressed by the Tenth Circuit in this context. The firing of the plaintiff did not arise because of any action by the Prairie Village City Council, but rather arose from the actions of Defendant Vernon as the head of the Public Works Department.

---

6. The plaintiff's First Amendment claims are also asserted against the individual defendants. Therefore, the court will analyze the plaintiff's

First Amendment claims below as to all of the defendants.

In *Figures v. Bd. of Pub. Utilities of Kansas City*, 731 F.Supp. 1479, 1483 (D.Kan. 1990), Judge O'Connor denied the defendant county commissioners absolute immunity because Judge O'Connor was unable to determine whether the defendants' actions were legislative in nature or were motivated by their personal interest. *Id.* at 1483–84. Based on the lack of evidence presented in this case concerning in what capacities the defendants were operating when the decision was made to terminate the plaintiff, the court is also unable to decide this issue at this time. However, the court is highly doubtful that absolute immunity applies to an individual municipal administrator's decision to reorganize her department without approval from a governing body. *See Mitchell v. Forsyth*, 472 U.S. 511, 522, 105 S.Ct. 2806, 2813, 86 L.Ed.2d 411 (1985) (denying absolute immunity to the Attorney General because he was not subject to checks similar to legislators that must stand for re-election and answer to their constituents); *Ditch*, 650 F.Supp. at 1250–51 (holding the defendant county commissioners absolutely immune for voting to eliminate a position and not absolutely immune for making the actual decision to fire the plaintiff). As a result, the court denies the defendants' summary judgment motions on this issue. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

### b. Qualified Immunity.

#### i. Standard.

Qualified immunity provides immunity from suit, not merely from liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985). Once a defendant pleads qualified immunity, the plaintiff bears a heavy two-part burden. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995). The plaintiff must establish "both that the defendant's alleged conduct violated the law and that that law was clearly established when the violation occurred." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988).

A threshold issue for a qualified immunity defense is whether the defendant's conduct actually violated the law. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Tonkovich v.*

*Kan. Bd. of Regents*, No. 95–2199, 1996 WL 705777 at *18–19 (D.Kan. Nov.22, 1996). In order to establish that the defendants' actions violated his First Amendment rights, the plaintiff must show that: "(1) the speech for which he was disciplined was constitutionally protected and (2) the protected speech motivated the adverse employment decision." *Miles v. Denver Pub. Sch.*, 944 F.2d 773, 775 (10th Cir.1991)(citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). If plaintiff can carry this burden, the defendant must show "by a preponderance of the evidence that it would have made the same decision absent the protected speech." *Id.*

In order to demonstrate that the law is clearly established, the plaintiff must show that the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir.1995). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992).

#### ii. Analysis—report of theft.

Construing the evidence in a light most favorable to the plaintiff, the court concludes that the defendants are entitled to qualified immunity from the plaintiff's § 1983 First Amendment claim. In addressing the threshold issue as to whether the defendant's conduct violated the law, the plaintiff correctly points out that the Tenth Circuit has clearly established that firing a government employee for reporting illegal activity within his department violates the employee's constitutional rights. *Bisbee v. Bey*, 39 F.3d 1096, 1100 (10th Cir.1994). The court notes that the Supreme Court has reached the same conclusion. *Doyle*, 429 U.S. at 287, 97 S.Ct. at 576. Thus, it is clearly established under both Tenth Circuit and Supreme Court jurisprudence that reporting a theft is consti-

tutionally protected speech under the First Amendment.

However, the plaintiff fails to meet the second part of the test, that his purported report of a theft motivated his dismissal. The plaintiff's First Amendment claim based on his alleged report of an alleged theft is quite different from the average whistleblower retaliation claim because there is no evidence that the alleged retaliators in any way were connected to the purported theft or were in any way detrimentally harmed by its report. Thus, the plaintiff has presented no reason or, more importantly, evidence indicating why any of the defendants would be motivated to retaliate against him for his alleged report of the alleged theft. To the contrary, Mr. Jim Nixon, the person who brought the alleged theft to the plaintiff's attention, reported the alleged theft to Defendants Vernon and Robnett and was subsequently named employee of the year. Thus, the uncontroverted evidence indicates that the alleged retaliators rewarded the individual who engaged in the exact same activity the plaintiff claims caused the alleged retaliators to take detrimental action against him.

■■■ The plaintiff's only credible argument in his favor is the temporal proximity between his alleged report of the alleged theft and his termination. *See Marx v. Schnuck Markets, Inc.,* 76 F.3d 324 (10th Cir.1996) (holding close temporal link between protected activity and adverse employment action is enough to preclude summary judgment on a retaliation claim), *cert. denied,* —— U.S. ——, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). In this case, construing the evidence in a light most favorable to the plaintiff, the temporal proximity between the plaintiff's protected activity and his termination was at best one month and, at worst, four months. The court believes that this temporal link standing alone is insufficient to raise an inference of retaliation under all of the facts and circumstances here, particularly in light of the fact that the plaintiff has failed to even articulate a reason let alone produce any evidence indicating why the defendants would want to retaliate against him for reporting an alleged theft. *See Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1394–96 (10th Cir. 1997) (holding four month time lag between protected activity and termination insufficient under the circumstances to justify an inference of causation and, therefore, the plaintiff needed to produce additional evidence beyond mere temporal proximity to establish causation); *see also Richmond v. Oneok, Inc.,* 120 F.3d 205, 209 (10th Cir.1997). As a result, despite the somewhat close temporal link between the plaintiff's protected activity and his termination, the court concludes that the individual defendants are entitled to qualified immunity because the plaintiff has failed to establish a basis for concluding that his reporting an alleged theft was a motivating factor behind his dismissal. *Id.; Miles,* 944 F.2d at 775 (citing *Doyle,* 429 U.S. at 287, 97 S.Ct. at 576). For this reason, the court grants summary judgment on this claim as to all individual defendants. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54. As a concomitant result, the court holds that because the individual defendants are entitled to qualified immunity based on the court's threshold determination that no violation of a law occurred, which is equivalent to a decision on the merits of the case, this finding also precludes the imposition of liability on the defendant municipal body. *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 783 (10th Cir.1993). Thus, the court also grants Defendant City of Prairie Village summary judgment. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

### iii. Analysis—arbitration testimony.

The defendants correctly point out that neither the Supreme Court nor the Tenth Circuit has ever clearly established that testimony given in an administrative hearing over a contractual dispute is a protected activity. In support of his position, the plaintiff points to a Tenth Circuit decision establishing that testifying in a criminal trial is a protected activity. *Melton v. City of Oklahoma City,* 879 F.2d 706, 729–30 (10th Cir. 1989), *modified on other grounds,* 928 F.2d 920 (10th Cir.1991) (en banc). However, the Melton court noted that the Supreme Court has warned against construing whether a right has been clearly established too broadly. *Id.* at 729 n. 37 (citing *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) ("Too general

a formulation would 'convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.' ")). The Supreme Court's admonition and the absence of any case law in the Tenth Circuit, or any other Circuit, concerning qualified immunity for testimony outside the criminal trial arena weighs heavily against the extension the plaintiff requests.

However, even if the court assumed, for argument purposes, that it is clearly established that one's arbitration testimony is protected by the First Amendment, the plaintiff's claim would still fail because he has produced no evidence showing that his arbitration testimony motivated his dismissal. The only evidence the plaintiff cites is two conversations he had that amount to nothing more than offhand comments. Specifically, the plaintiff points to an alleged statement by Defendant Robnett that the plaintiff was "encouraged" by the outcome of the arbitration proceeding, and a laugh by Defendant Vernon when the plaintiff said disciplinary action taken against him was motivated by his arbitration testimony. *Pl.'s Mem. in Opp.*, at 109. This is not enough to satisfy the plaintiff's heavy burden. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995). Moreover, in this case, the plaintiff does not even have the temporal proximity argument to fall back on because his testimony took place more than two years prior to his dismissal. Therefore, the court concludes that the individual defendants are entitled to qualified immunity on the plaintiff's First Amendment claim based on his arbitration right because he has failed to demonstrate (1) that it is clearly established that one's arbitration testimony is protected speech under the First Amendment, *Losavio*, 847 F.2d at 646, and (2) that a violation of the law occurred because he has produced no evidence from which a reasonable factfinder could conclude that his speech was a motivating factor behind his dismissal. *Miles*, 944 F.2d at 775 (citing *Doyle*, 429 U.S. at 287, 97 S.Ct. at 576). As a result, the court grants summary judgment on this issue to the individual defendants based on their qualified immunity. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54. As a concomitant result, the court

holds that because the individual defendants are entitled to qualified immunity based on the court's threshold determination that no violation of a law occurred, which is equivalent to a decision on the merits of the case, this finding also precludes the imposition of liability on the defendant municipal body. *Hinton*, 997 F.2d at 783. Thus, the court also grants Defendant city of Prairie Village summary judgment. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

**3. Fourteenth Amendment due process property interest claim.**

**a. Standard.**

To establish entitlement to procedural due process, a plaintiff must demonstrate a property interest in the benefit for which protection is sought. *See Bd. of Regents v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Baker v. White*, No. 96–4039, 1997 WL 122589 at *1 (10th Cir. Mar 19, 1997)(citing *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). To determine the plaintiff's property interest in his continued employment, the court must look to Kansas law. *Id.* (citations omitted).

**b. Analysis.**

Defendant City of Prairie Village moves for summary judgment on the plaintiff's § 1983 due process claim based on the same reasoning the court previously granted the individual defendants summary judgment on that claim, i.e., that the plaintiff does not have a protected property interest in his continued employment. *See Butler*, 961 F.Supp. at 1475. In response, the plaintiff refers the court to the relevant arguments in his memorandum in opposition to the individual defendants' motion to dismiss. The court rejected those arguments as they applied to the individual defendants in its previous order. *Id.* Thus, because the plaintiff offers no new arguments, the court concludes that the plaintiff's § 1983 Fourteenth Amendment

due process property interest claim against Defendant Prairie Village fails because the plaintiff has failed to demonstrate that he has a protected property interest in his continued employment. *Id.* As a result, the court grants Defendant City of Prairie Village summary judgment on the plaintiff's § 1983 Fourteenth Amendment due process property interest claim. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

### 4. ADA claims.

#### a. Discrimination.

#### i. Standard.

 Absent direct evidence of discrimination, cases involving discrimination in violation of the ADA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997). Under this standard, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. A prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the employee. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). The burden of establishing a prima facie case of disparate treatment is not an onerous one. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Nevertheless, the plaintiff must, at a minimum, produce evidence that raises a reasonable inference that each element exists. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 530 (10th Cir.1994). Although all doubts must be resolved in the plaintiff's favor, allegations alone will not defeat summary judgment. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

 To establish a prima facie case of discrimination, a plaintiff must prove (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified with or without reasonable accommodation, which he must describe, to perform the essential functions of the job; and (3) that the employer terminated him due to the disability. *See*

*White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995). "Disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In general, a person is "substantially limited" if he or she cannot perform a major life activity or is significantly restricted in the performance of such activity. *See* 29 C.F.R. § 1630.2(j)(1). Working is considered a major life activity. *See* 29 C.F.R. § 1630.2(i). An individual's ability to perform the major life activity of working is substantially limited if he or she is significantly restricted in his or her ability to "perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Inability to perform one particular job is not a substantial limitation of the major life activity of working. *See id.* Courts may consider the following factors in determining whether an individual is substantially limited in the major life activity of working:

(A) The geographical area to which the individual has reasonable access; (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

 Once a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the decision. *Hicks,* 509 U.S. at 506–07, 113 S.Ct. at 2746–47. The

ultimate burden of persuasion remains with the plaintiff to show that unlawful discrimination was the true reason for the adverse action. *Id.* at 507, 113 S.Ct. at 2747. If the defendant articulates a legitimate, non-discriminatory reason, the presumption of discrimination established by the prima facie showing "drops from the case." *Id.*

 If the defendant proffers a valid reason for the challenged conduct, the plaintiff must offer evidence that the defendant's proffered reasons were really a pretext for illegal conduct. *Jones v. Unisys Corp.,* 54 F.3d 624, 630 (10th Cir.1995). "At the summary judgment stage, if the plaintiff produces both a prima facie case and evidence supporting a finding that 'defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder.'" *Id.* (citing *Ingels v. Thiokol Corp.,* 42 F.3d 616, 621 (10th Cir.1994)); *see Durham v. Xerox Corp.,* 18 F.3d 836, 839–40 (10th Cir.1994). The plaintiff's mere conjecture that his or her employer's explanation is a pretext for discrimination is not sufficient to meet the plaintiff's evidentiary burden. *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988). Failure by the plaintiff to come forward with evidence of pretext, however, will entitle the defendant to judgment. *Cone,* 14 F.3d at 529; *see Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 798 (10th Cir.1993) ("If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate.").

### ii. Analysis.

 Defendant City of Prairie Village argues that the plaintiff cannot state a prima facie case of disability discrimination because the plaintiff has produced no evidence indicating that the plaintiff was terminated because of his disability.[7] Defendant City of Prairie Village further argues that even if the court determines that the plaintiff has satisfied his prima facie case burden, the plaintiff's disability discrimination claim still

fails because Defendant City of Prairie Village has produced a non-pretextual, legitimate non-discriminatory reason for the plaintiff's termination, i.e., Defendant Vernon determined that the assistant director positions were not needed and their responsibilities could be absorbed by the other existing positions in the Public Works Department. In response, the plaintiff discusses his evidence concerning the issue of whether he is a disabled person within the meaning of the ADA as well as whether he is qualified with or without reasonable accommodation to perform the essential functions of his job. *See Pl.'s Mem. in Opp.,* at 72–78. However, with respect to this claim, the plaintiff fails to point to any evidence indicating that Defendant City of Prairie Village terminated him due to his alleged disability. *See id.* Put simply, construing the facts in a light most reasonable to the plaintiff, the plaintiff has failed to produce any evidence demonstrating that he was treated differently than similarly situated non-disabled individuals. As a result, the court concludes that the plaintiff has not satisfied his prima facie case burden and, therefore, the court grants Defendant City of Prairie Village summary judgment on this claim. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54; *White,* 45 F.3d at 360–61.

### b. Failure to accommodate.

### i. Standard.

 In order to establish a claim for refusal of accommodation in violation of the ADA, a plaintiff must show (1) that he or she is a qualified individual with a disability within the meaning of the ADA; (2) that his or her employer was aware of his or her disability; (3) that he or she requested a reasonable accommodation; and (4) that his or her employer denied his or her request for a reasonable accommodation. *See Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir.1996) (citing 42 U.S.C. § 12112(b)(5)(A)).

---

7. Defendant City of Prairie Village also argues that the plaintiff cannot state a prima facie case of disability discrimination based on after acquired evidence and on the fact that the plaintiff applied for and received social security disability benefits. The court need not address these issues based on its conclusion below that the plaintiff has failed to satisfy his prima facie case burden on other independent grounds.

**1402**

#### ii. Analysis.

Around May 6, 1993, the plaintiff presented Defendant Robnett a letter from his psychologist indicating that the plaintiff should generally limit himself to working only 40 hours per week. The defendant argues, among other things, that the plaintiff's 40 hour accommodation request was honored. Construing the facts in a light most favorable to the plaintiff, the only evidence the plaintiff has indicating that Defendant City of Prairie Village failed to honor his accommodation request is Defendant Robnett's comment to the plaintiff that he was drowning in work and the plaintiff was not keeping up his end and Defendant Robnett's comment in his deposition that he believed that the plaintiff was working in excess of 40 hours a week after the plaintiff made his accommodation request.[8]

The plaintiff has taken Defendant Robnett's former comment out of context. Defendant Robnett made that comment because the plaintiff was not focusing on the work on which Defendant Robnett told him to focus and, as a result, Defendant Robnett was having to do it. Thus, Defendant Robnett was not asking the plaintiff to do more work than he was already doing; rather, Defendant Robnett was asking the plaintiff to focus on the work that he had prioritized for the plaintiff. With respect to Defendant Robnett's latter comment, Defendant Robnett's conclusory statement of belief concerning how much the plaintiff was working is not evidence that the plaintiff actually worked more than 40 hours per week at any time after he made his accommodation request. Moreover, Defendant Robnett also stated that he had weekly meetings with the plaintiff to ensure he did not have to work more than 40 hours per week and that he reminded the plaintiff on numerous occasions not to work more than 40 hours. Thus, based on the plaintiff's failure to produce any evidence indicating that Defendant City of Prairie Village failed to honor his accommodation request, the court concludes that the plaintiff has not made out a prima facie case of refusal of accommodation in violation of the ADA and, therefore, Defendant City of Prairie Village is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54; *Lowe*, 87 F.3d at 1174.

#### c. Retaliation.

#### i. Standard.[9]

To establish a prima facie case of retaliation in violation of the ADA, a plaintiff must show (1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir.1997); 42 U.S.C. § 12203(b). Even if a plaintiff was incorrect in his or her belief that he or she was entitled to the accommodation he or she requested, a plaintiff may still pursue his or her retaliation claim provided that he or she had a good faith basis for believing he or she was entitled to the accommodation he or she requested. *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir.1996) (citing *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir.1984)), *cert. denied*, —— U.S. ——, 117 S.Ct. 1468, 137 L.Ed.2d 682 (1997).

#### ii. Analysis.

The plaintiff contends that Defendant City of Prairie Village terminated him

---

8. Defendant City of Prairie Village states in its reply that the plaintiff may have worked more than forty hours two or three weeks after he made his accommodation request. The court notes that the plaintiff makes no mention of this evidence. However, the court believes it is worth mentioning because the fact that the plaintiff worked more than forty hours two or three weeks over a nine month period certainly complies with the plaintiff's accommodation request as presented in his psychologist's letter dated May, 1993, which states that he should generally keep from working more than 40 hours per week.

9. Absent direct evidence of retaliation, cases involving retaliation in violation of the ADA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *Rhymes v. St. Joseph Reg'l Med. Ctr. of N. Okla., Inc.*, No. 95–6230, 1996 WL 346585 at *1 (10th Cir. Jun 25, 1996). However, because the court has already stated this burden-shifting process in section (a)(i) above, the court will not repeat it except to state the plaintiff's prima facie case requirements.

in retaliation for requesting an accommodation under the ADA in violation of 42 U.S.C. § 12203(b). It is uncontroverted that requesting an accommodation for a disability constitutes a protected activity under the ADA and that the plaintiff was terminated approximately nine months after he informed Defendant Robnett of his clinical depression and his need to work no more than 40 hours per week. Defendant City of Prairie Village does not contest or substantively address the issue of whether there is a causal connection between the plaintiff's protected activity and his termination. Thus, the issue becomes whether there is evidence from which a reasonable trier of fact could conclude that Defendant City of Prairie Village's legitimate non-discriminatory reason, the elimination of the plaintiff's position, is pretextual. In support of his pretext argument, the plaintiff argues, without pointing the court to any evidence, that the overall circumstances point toward the pretextual nature of the elimination of the plaintiff's position and suggest an ulterior motive. *See Pl.'s Mem. in Opp.*, at 94. Such an unsupported assertion is insufficient to overcome a legitimate non-discriminatory reason. *Branson*, 853 F.2d at 772 (holding that mere conjecture is insufficient to satisfy a plaintiff's pretext burden). As a result, the court concludes that Defendant City of Prairie Village is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

### d. Hostile work environment.

### i. Standard.

In order to establish a prima facie case of hostile work environment disability harassment, the plaintiff must show (1) that he is a qualified individual within the meaning of the ADA; (2) that he was subject to unwelcome harassment; (3) that the harassment was based on his disability or request for accommodation; and (4) that the harassment altered a term, condition, or privilege of his employment and created an abusive working environment. *See Stevens v. Hy–Vee Food Stores, Inc.*, No. 95–2572, 1997 WL 159050 at *6 (D.Kan. Mar 20, 1997) (citations omitted). To prevail under a hostile work environment theory, a plaintiff must show that the allegedly harassing conduct had the "purpose or effect of unreason-

ably interfering" with his or her work performance or created an "intimidating, hostile, or offensive working environment." *See Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). Casual or isolated manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir.1987); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993) (holding that relatively isolated instances of non-severe misconduct will not support a hostile work environment claim) Whether the allegedly harassing conduct is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1126 (10th Cir.1993). When making its determination, the court should look at, among other things, the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). These factors are evaluated from both a subjective and an objective viewpoint. *Id.* at 21–22, 114 S.Ct. at 370–71. The court must consider not only the effect the discriminatory conduct actually had on the plaintiff, but also the impact it likely would have had on a reasonable employee in the plaintiff's position. *Id.* Evidence of a general work atmosphere, in addition to evidence of specific hostility directed at the plaintiff, may be considered in evaluating the claim. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1385 (10th Cir.1991).

### ii. Analysis.

The plaintiff contends that Defendant City of Prairie Village subjected him to a hostile work environment because of his disability and his request for an accommodation. In support of his theory, the plaintiff cites verbal abuse from Defendants Robnett and Vernon; Defendant Robnett constantly telling the plaintiff that he was not doing his share; Defendant Vernon singling the plain-

tiff out for unwarranted discipline; Defendant Vernon giving the plaintiff difficult assignments on short notice with insufficient deadlines; Defendant Vernon withdrawing from the plaintiff any assistance from the support staff; and the elimination of the plaintiff's position. In response, Defendant City of Prairie Village argues that the plaintiff is exaggerating the evidence and, in reality, the evidence demonstrates that the plaintiff was not subjected to a hostile work environment. The court agrees. The only evidence of verbal statements which could potentially be construed as verbal abuse from either Defendant Robnett or Defendant Vernon is Defendant Robnett's numerous statement to the plaintiff that he did not feel the plaintiff was "holding up his end," which clearly was intended to convey that the plaintiff was not focusing on and, therefore, not completing the work Defendant Robnett prioritized for the plaintiff. With respect to Defendant Vernon, the plaintiff has produced no evidence indicating that Defendant Vernon's discipline was unwarranted, that Defendant Vernon gave the plaintiff difficult work assignments on short notice with an insufficient deadline on more than one occasion,[10] that Defendant Vernon withdrew any necessary support staff assistance from the plaintiff. Construing the evidence in a light most favorable to the plaintiff, the court concludes that the plaintiff's evidence, when viewed together along with the totality of the circumstances, is insufficient to create an evidentiary basis from which a reasonable factfinder could conclude that the plaintiff was subjected to a hostile work environment based on his disability and/or request for an accommodation. Evaluating the conduct on which the plaintiff bases his hostile work environment claim from an objective and subjective viewpoint, the court concludes

that it is not severe or frequent enough to create a hostile work environment. *Harris,* 510 U.S. at 21–23, 114 S.Ct. at 370–71. As a result, the court concludes that Defendant City of Prairie Village is entitled to summary judgment on this claim. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

### 5. *Age discrimination claim.*

#### a. *Standard.*[11]

■ In order for a plaintiff to establish a prima facie case of age discrimination, he must show: (1) that he was within the protected age group; (2) that he was doing satisfactory work; (3) that he was discharged; and (4) that his position was filled by a younger person or he was treated less favorably than younger employees.[12] *Gonzagowski v. Widnall,* 115 F.3d 744, 749 (10th Cir.1997) (citations omitted).

#### b. *Analysis.*

Defendant City of Prairie Village contends that the plaintiff cannot satisfy his prima facie case burden because the plaintiff cannot demonstrate that he was doing satisfactory work or that he was replaced by someone younger than he is. In response, the plaintiff argues that his job performance was satisfactory based (1) on his written job evaluations prior to his request for an accommodation for his disability, (2) on the lack of contemporaneous written warnings to the plaintiff advising him that his job performance was substandard, (3) on the plaintiff's five year job tenure, and (4) on the fact that Defendant City of Prairie Village terminated the plaintiff because his position was determined to be superfluous, not because of performance problems. The plaintiff further argues that Defendant City of Prairie Village

---

10. Paragraph 9 of the plaintiff's affidavit discusses an example of an instance during which Defendant Vernon purportedly gave the plaintiff a difficult work assignment on short notice with an insufficient deadline. This is the only specific instance the plaintiff avers in support of his position that Defendant Vernon gave him difficult work assignments on short notice with an insufficient deadline.

11. Absent direct or circumstantial evidence of age discrimination, the court analyzes age discrimination claims according to the shifting bur-

den of proof scheme initially articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Greene v. Safeway Stores, Inc.,* 98 F.3d 554, 560–63 (10th Cir.1996); *Thomas v. Int'l Business Machines,* 48 F.3d 478, 484 (10th Cir.1995). However, because the court has already stated this burden-shifting process in section (4)(a)(i) above, the court will not repeat it except to state the plaintiff's prima facie case requirements.

12. In this case, the plaintiff only contends that he was replaced by someone younger than he is.

replaced him with a younger person, Mr. Kevin Bruemmer. Specifically, the plaintiff asserts that after his termination, Defendant City of Prairie Village placed Mr. Bruemmer in a newly established Project Coordinator position in its Public Works Department, which entailed many of the plaintiff's former duties, required similar qualifications as the plaintiff's former position, and paid a similar wage as the plaintiff's former position.

13. The plaintiff's former work duties are described as follows:

Plan and organize construction of existing storm drainage systems and open water courses.

Plan and implement ongoing training programs for public works employees.

Prepare reports or information requested by Public works Director.

Attend meetings of the City Council as required, coordinate activities with appropriate committees and commissions.

Serve as liaison between residents, consulting engineer and contractor on projects.

Plan, organize and carry out specific programs or projects as requested.

Develop, manage and report results of applicable programs for the annual budget.

Carry out city and departmental policies as required.

Assist Director with preparation of Public Works Committee agenda items or other Council items as required.

See that applicable job performance evaluations are conducted per policy with associated documentation.

Develop and/or obtain cost estimates required for construction of city facilities.

Perform related duties as required.

Plan procedures and report results of design, placement, operation, maintenance and uniformity of traffic safety control policy and procedures.

Monitor communication system to assure operational quality.

Manage Excavation Permit system.

Manage Stormwater Management permit system.

Provide recommendations for street lighting petitions and see that all installations or changes in existing street lighting system conform to Prairie Village Street Light Policy. Develop and follow through all street light work orders.

Arrange for biannual KDOT bridge inspections.

Monitor use of Personal Computer and recommend software for various programs as required.

Obtain easements required for construction and maintenance projects.

Serve as liaison, complete forms and procedures required for projects involving federal funding.

■ Construing the facts in a light most favorable to the plaintiff, the court concludes that he has failed to establish a prima facie case of age discrimination because he has failed to demonstrate that he was replaced by a younger person. In support of his contention that he was replaced by a younger person, the plaintiff cites a description of his former work duties,[13] the desired qualifications for his former position,[14] a description of the Project Coordinator's work duties,[15]

*Def.s' Joint Reply*, at response to Pl.'s additional fact # 9.

14. The desired qualifications for the plaintiff's former position are,

... comprehensive knowledge of the materials, methods and techniques utilized in the construction of streets, sidewalks, storm sewers, and park areas/facilities, the ability to plan, organize, inspect, interpit (sic) plans, report results both written and verbal, coordinate people and construction activity as related public works activities and projects. S/he must have broad general problem solving, decision-making and people management skills related to departmental operations.

Prefer a college graduate with a degree in engineering or public administration or related field, or an equivalent combination of formal training and related engineering/construction management experience.

Must possess basic math aptitude, good written and verbal communication skills and strong organizational skills.

The Assistant Director shall have a minimum of three years of experience in public works or related construction project management. Supervisory/management level experience is desired. Must have ability to provide independent supervision/management of various departmental activities as required.

Must have a valid driver's license.

Must be available outside normal working hours as required; exempt position.

*Def.s' Joint Reply*, at response to Pl.'s additional fact # 9.

15. The Project Coordinator position's duties are as follows:

Plans and organizes the administration of utility and contract construction. Performs administrative duties that relieves the department manager of routine administrative responsibilities as delegated.

Interacts with community groups, individual residents and other governmental groups.

Assists the department manager on other department functions and duties as assigned.

Assists others in their performance of Public Works Assignments.

*Pl.'s Mem. in Opp.*, at additional fact # 82.

**1406**

the desired qualifications for the Project Coordinator position,[16] the plaintiff's former salary ($32,526 annually), and the salary range of the Project Coordinator position ($25,200 to $36,000 annually) in November of 1994. The plaintiff cites *Gallo v. Prudential Residential Services,* 22 F.3d 1219 (2nd Cir. 1994), for the proposition that the above evidence is sufficient to raise a jury question concerning whether Mr. Bruemmer replaced the plaintiff. In *Gallo,* the court focused on the exact percentage of and the specific nature of the plaintiff's former work duties, which the defendant had resurrected within nine to ten months after the plaintiff's termination. *Id.* at 1225. The *Gallo* court concluded that the plaintiff had satisfied her prima facie case burden by producing evidence which indicated that the defendant transferred approximately 99 percent of her former work duties to another department within nine months of her termination and that the defendant refused to consider her for the position that took on 80 percent of her former duties. *Id.* at 1225, 1228. In this case, the plaintiff had 21 specific former job duties and the Project Coordinator position has four general job duties. Unlike in *Gallo,* the plaintiff has not produced any evidence (such as Mr. Bruemmer's deposition testimony describing in detail what his work duties are) indicating the specific nature of Mr. Bruemmer's current work duties. Thus, unlike in *Gallo,* the court has no evidentiary basis from which it could conclude that Defendant City of Prairie Village substantially resurrected the plaintiff's former work duties when it created the Project Coordinator position. The fact that the positions have similar general qualifications, which are probably applicable to many positions in a Public Works Department, and that the plaintiff's salary falls within the Project Coordinator's $11,000 salary range are mere generalities, which are, evidentiary speaking, considerably less than the plaintiff had in the *Gallo* case.

Thus, the court believes that the plaintiff's evidence, which consists primarily of generalities, is not enough to provide an evidentiary basis from which a reasonable factfinder could conclude that Defendant City of Prairie Village unlawfully discriminated against the plaintiff based on his age. As a result, the court concludes that the plaintiff's age discrimination claim fails because he failed to satisfy his prima facie case burden. *Gonzagowski,* 115 F.3d at 749; *Cone,* 14 F.3d at 530. As a result, the court grants Defendant City of Prairie Village's motion for summary judgment on this claim. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

### C. Individual defendants.

#### 1. Outrage (Count VII).

##### a. Standard.

Kansas has set a very high standard for the common law tort of outrage. *Anspach v. Sheet Metal Workers' Int'l Ass'n Local No. 2,* No. 93–3234, 1995 WL 133385 at *2 (10th Cir. March 28, 1995). To establish a prima facie case of outrage, the plaintiff must show: (1) that the defendant's conduct was intentional or in reckless disregard of the plaintiff; (2) that the defendant's conduct was extreme and outrageous; (3) that there is a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) that the plaintiff's mental distress is extreme and severe. *Id.* To constitute sufficiently extreme and outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (citing *Roberts v. Saylor,* 230 Kan. 289, 293, 637 P.2d 1175 (1981)).

---

**16.** The Project Coordinator position's desired qualifications include (1) consider able knowledge of department activities, (2) ability to work and think independently and carry out complex oral and written directions, (3) practices accepted safety and preventative maintenance procedures at all times, (4) familiar with and follows the policies and practices contained in the City Personnel Handbook and Public Works Practices Manual, (5) ability to work in various weather conditions and perform the basic job abilities in Public Works, (6) must have a valid driver's license, and (7) a college degree in engineering or a related field from an accredited four year college is preferred although experience in a related field may be substituted for two years of related college. *Pl.'s Mem. in Opp.,* at additional fact # 82.

#### b. Analysis.

 Construing the evidence in a light most favorable to the plaintiff, the court concludes that the plaintiff has failed to state a prima facie case of outrage under Kansas law. The plaintiff bases his outrage claim on allegations of unfair discipline, refusal to fairly consider complaints of harassment, issuance of low evaluations, and refusal to accommodate his request that he work no more than 40 hours per week, all of which culminated in his termination. The plaintiff also claims these incidents were aggravated by his medical condition, which is characterized as clinical depression.

In *West v. Boeing Co.*, 843 F.Supp. 670, 678 (D.Kan.1994), the court dealt with an outrage claim based on allegations very similar to those presented by the plaintiff. In *West*, the plaintiff endured demeaning and offensive remarks, threats to fire her, failure to address her sexual harassment complaint, and severe embarrassment. *Id.* at 676. The *West* court dismissed the outrage claim as to all defendants, except one defendant who made demeaning comments and looked up the plaintiff's dress because it involved "both verbal *and physical* acts of shockingly insensitive character." *Id.* at 678. The court believes that the individual defendants' actions in this case are less outrageous and extreme than the actions of the defendants who were granted dismissals in the *West* decision. Moreover, the mere fact that the effect of the individual defendants' conduct may have been amplified by the plaintiff's medical condition does not provide a sufficient basis to deny summary judgment. *Fusaro v. First Family Mortgage Corp., Inc.*, 257 Kan. 794, 805, 897 P.2d 123 (1995)(upholding district court's grant of summary judgment for the defendant as to an outrage claim where the effect of the defendant's conversion of the plaintiff's personal property had been magnified by her medical condition consisting of depression and paranoid delusions). Thus, because the plaintiff has not alleged any conduct by any of the individual defendants which was so outrageous in char-

acter or so extreme in degree as to go beyond the bounds of decency or to be regarded as atrocious and utterly intolerable in a civilized society, *Anspach,* 1995 WL 133385 at *2, the court concludes that summary judgment is appropriate on this claim. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

#### 2. Conspiracy under § 1983.[17]

#### a. Standard.

 To maintain a civil conspiracy claim under 42 U.S.C. § 1983, the plaintiff must show a "combination of two or more persons acting in concert, either to commit an unlawful act, or to commit a lawful act by unlawful means." *Singer v. Wadman,* 745 F.2d 606, 609 (10th Cir.1984). A § 1983 conspiracy claim must show deprivation of a constitutional right protected by § 1983, as opposed to a § 1985(3) claim, which can only be maintained on a showing of class-based, discriminatory animus. *Dixon v. City of Lawton, Okla.,* 898 F.2d 1443, 1449 n. 6 (10th Cir.1990).

#### b. Analysis.

The individual defendants claim that the plaintiff has not presented sufficient evidence to support a showing that two or more persons combined to conspire against him to violate his rights as protected under § 1983. The plaintiff responds by referring to an alleged conversation between Councilman Randall and him. Specifically, the plaintiff alleges that,

> . . . Randall told Butler that Defendants Pendleton and Vernon had said they wanted Butler out of the public works department before the new director came in. At that time, Councilman Randall told Butler that he had been at a meeting at which Vernon said she was going to clean house in the public works department.

*Pl.'s Mem. in Opp.,* at uncontroverted fact # 79; *Pl.'s Errata Sheet to his Mem. in Opp.,* at 2. However, the individual defen-

---

**17.** In its papers, Defendant City of Prairie Village argues that the plaintiff's state common law conspiracy claim must be dismissed against it. However, because the Pretrial Order in this case indicates that the plaintiff asserted his state com- mon law conspiracy claim only against the individual defendants, *Pretrial Order,* at 6, the court need not address this argument because there is no common law conspiracy claim against Defendant City of Prairie Village in this case.

dants contend that the alleged statement by Councilman Randall to the plaintiff is inadmissible hearsay and, therefore, the plaintiff S 1983 conspiracy claim fails because he has no admissible evidence to support it.

■ Clearly, Councilman Randall's statement to the plaintiff is an out of court statement that goes to the truth of the matter asserted, i.e., that Defendants Pendleton and Vernon conspired against the plaintiff in violation of § 1983. Thus, Councilman Randall's alleged statement is hearsay as defined by Federal Rule of Evidence 801(c). In order for this hearsay statement to be admissible, it must be either an admission by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2), or an exception to the hearsay rule pursuant to Federal Rules of Evidence 803 or 804. Unfortunately, the plaintiff does not. provide an argument supporting why this hearsay statement should be admitted under either of these rationales. The court, however, through its independent analysis, has determined that Council Randall's alleged statement to the plaintiff is not an admission by a party-opponent under Rule 801(d)(2) because he was not a Prairie Village City Councilman at the time of the statement and, therefore, Councilman Randall did not have the requisite agency relationship with the alleged co-conspirators to make his purported statement admissible under Rule 801(d)(2). *See Boren v. Sable*, 887 F.2d 1032, 1038–39 (10th Cir.1989) (holding that a statement made by the plaintiff's co-worker was not admissible against the defendant's co-workers unless an agency relationship existed between the declarant and the defendants). Further, the court has determined that the statement does not fall under any of the exceptions to the hearsay rule provided in Federal Rules of Evidence 803 and 804. Thus, the court will not consider Councilman Randall's alleged statement for purposes of this summary judgment motion because it is inadmissible hearsay. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995) ("Hearsay testimony cannot be considered because 'a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill.' "). As a result, because the plaintiff's only evidence in support his § 1983 conspiracy claim is inadmissible hearsay, the court concludes that summary judgment is appropriate on this claim. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54.

## V. Conclusion.

Based on the above analysis, the court has concluded that all of the plaintiff's claims are subject to summary judgment. However, although the plaintiff lost this case, the court feels compelled to comment on the performance of plaintiff's appointed counsel. Plaintiff's counsel has taken a very difficult case and done an exceptional job marshalling the facts, spotting the issues, and zealously advocating for his client. The court applauds his valiant, although unsuccessful, efforts.

**IT IS THEREFORE ORDERED BY THE COURT** that the defendants' motion to strike (Doc. # 153) is granted with respect to the plaintiff's conclusory statement in paragraph 8 of his affidavit and denied on all other issues.

**IT IS FURTHER ORDERED** that the defendants' summary judgment motions (Doc.s # 130 and # 133) are granted.

**IT IS SO ORDERED.**